1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF TENNESSEE
2              WESTERN DIVISION

3    _____
                                |
4    UNITED STATES OF AMERICA,   |
                                |
5         Plaintiff,            |
                                |
6    vs.                        |    NO. 23-CR-20121
                                |
7    ASHLEY GRAYSON AND         |
     JOSHUA GRAYSON,            |
8                               |
          Defendants.          |
9
     _____
10

11

12

13    TRANSCRIPT OF THE SCHEDULING/STATUS CONFERENCE

14                    BEFORE THE

15          HONORABLE JON P. MCCALLA

16

17

18                    THURSDAY

19              OCTOBER 26, 2023

20

21

22

23
            TINA DuBOSE GIBSON, RPR, RCR
24              OFFICIAL REPORTER
           FOURTH FLOOR FEDERAL BUILDING
25           MEMPHIS, TENNESSEE 38103

                UNREDACTED TRANSCRIPT

```
 1              A P P E A R A N C E S

 2

 3       Appearing on behalf of the Government:

 4           PATRICK NEAL OLDHAM
             United States Attorney's Office
 5           167 N. Main Street, Suite 800
             Memphis, Tennessee 38103
 6           (901) 544-4231
             neal.oldham@usdoj.gov
 7

 8       Appearing on behalf of the Defendant Ashley Grayson:

 9           LESLIE I. BALLIN
             Ballin, Ballin & Fishman, PC
10           200 Jefferson Avenue
             Suite 1250
11           Memphis, Tennessee 38103-2007
             (901) 525-6278
12           lballin@bbfpc.com

13

         Appearing on behalf of the Defendant Joshua Grayson:
14
             MICHAEL E. SCHOLL
15           The Scholl Law Firm
             200 Jefferson Avenue
16           Suite 1500
             Memphis, Tennessee 38103
17           (901) 529-8500
             mike@scholl-law-firm.com
18

19

20

21

22

23

24

25

                        UNREDACTED TRANSCRIPT
```

```
 1                      THURSDAY

 2                 OCTOBER 26, 2023

 3              ----------------------

 4

 5          THE COURT:  Let's go over a couple of things, and

 6   because I didn't do the first conference, I'm going to need

 7   some updating in terms of what our situation is.  I see that

 8   the requirement was that the disclosers, the discovery be

 9   made on August the 9th.  Was it made then?

10          MR. OLDHAM:  Yes, Your Honor.

11          THE COURT:  Okay.  Well, what happened to the

12   letter, then?  Was it additional material in connection with

13   the letter that you included?

14          MR. OLDHAM:  Your Honor, I believe that the

15   letter was -- that it was an oversight where it was filed

16   later, Your Honor.  We have one from -- we had --

17          THE COURT:  You had already produced everything?

18          MR. OLDHAM:  Yes, Your Honor.

19          THE COURT:  And you produced it in August?

20          MR. OLDHAM:  Yes, Your Honor.

21          THE COURT:  That's good.  I am going to ask a

22   little bit because I don't know about what happened here.

23          MR. OLDHAM:  Yes, Your Honor.

24          THE COURT:  Whose cell phone was used according

25   to the government?
```

UNREDACTED TRANSCRIPT

4

1           MR. OLDHAM:  There are -- the one that the

2   government is relying on, Your Honor, is somebody named

3   Olivia Johnson, who is a witness here in Memphis, Tennessee.

4   And the other would be an electronic device used by the

5   defendant Ashley Grayson.

6           THE COURT:  Okay.  What would the second device

7   be?

8           MR. OLDHAM:  Your Honor, I don't know if we have

9   that information.  It would have to be a device with some

10  sort of platform that would be able to do a video call.

11          THE COURT:  It could be an iPad.

12          MR. OLDHAM:  It could, Your Honor.  They could do

13  a video conference between herself and Ms. Johnson, who is

14  here.

15          THE COURT:  Do we have any copies of the video

16  conferences?

17          MR. OLDHAM:  We do, Your Honor, and that has been

18  disclosed.

19          THE COURT:  Okay.  What do they show?

20          MR. OLDHAM:  Your Honor, it purports to show a

21  conversation between Ms. Johnson and Ms. Grayson where they

22  are discussing a previous conversation they had in person

23  approximately a week to ten days before regarding

24  Ms. Grayson's desire to have three people killed by

25  Ms. Johnson and her significant other.

UNREDACTED TRANSCRIPT

1        During the course of the conversation, they

2   decide that two of them -- or Ms. Grayson decides that two of

3   them, it's not the right time for those two; however, the

4   third, she is ready for her to -- I think the language used

5   is -- be gone.

6            THE COURT:  To be gone, to kill this person?

7            MR. OLDHAM:  Yes, Your Honor.  And --

8            THE COURT:  What were they killing these people

9   for?

10           MR. OLDHAM:  Your Honor, it is -- it's a

11  complicated series of events that mostly took place online

12  and in social media --

13           THE COURT:  Sure.

14           MR. OLDHAM:  -- and this person was a rival in

15  her business who may have already also posted personal

16  information about Ms. Grayson including but not limited to

17  her actual address and other information that would harm --

18  potential to harm Ms. Grayson in person and especially her

19  business that she had built.  She was a very successful -- or

20  is a very successful business person and influencer on social

21  media.

22           And the attacks that she got from all three

23  potential victims, but the one named in the indictment could

24  harm her personal reputation and her business reputation, and

25  that is what the government thinks she was reacting to.

UNREDACTED TRANSCRIPT

1          THE COURT:  Okay.  How much was to be paid for
2    the murder?

3          MR. OLDHAM:  Your Honor, it was supposed to be
4    $20,000.  Our witnesses, however, said that they tried to
5    carry out the homicide and told Ms. Grayson they deserved at
6    least half of the money.  They sent her pictures or a video
7    of police lights and intimated that that's where they had
8    tried to take out the person who they had decided needed to
9    be killed now.

10         In the same night, they drove to Dallas.  Met
11   Ms. Grayson and her husband in the bottom floor apartment
12   that is in his name.  And we have -- we do have the
13   surveillance video where they meet.  They're there for a few
14   moments, Your Honor.  And Mr. Grayson is seen to push
15   something over to the witnesses in the case, and they will
16   testify that it was $10,000.

17         THE COURT:  10,000.

18         MR. OLDHAM:  So it would be half of what the
19   amount promised was.

20         THE COURT:  Was the money recovered?

21         MR. OLDHAM:  It was not, Your Honor.  When --
22   this all happened before police ever got involved.

23         THE COURT:  Okay.

24         MR. OLDHAM:  The case actually came to light when
25   they reached out to a local attorney, who then reached out to

UNREDACTED TRANSCRIPT

```
 1    me and my office to say we have this issue, what should we

 2    do?  And then they came in and started --

 3                THE COURT:  I'm sorry.  Who reached out to you?

 4                MR. OLDHAM:  A local attorney.

 5                THE COURT:  A local attorney.  And a key witness?

 6                MR. OLDHAM:  He could be, Your Honor.  If they

 7    were impeached, I think.

 8                THE COURT:  Sure.

 9                MR. OLDHAM:  He could be.  But I think at this

10    point he is not.

11                THE COURT:  A local Dallas attorney?

12                MR. OLDHAM:  No.  A local Memphis attorney.

13                THE COURT:  Memphis attorney?

14                MR. OLDHAM:  Yes, Your Honor.

15                THE COURT:  Oh, okay.  Who went to the local

16    Memphis attorney with this concern?

17                MR. OLDHAM:  The Johnsons, Your Honor, the people

18    who had been hired.  After they got the money, I think the

19    communication with Ms. Grayson broke down pretty rapidly, and

20    they then went to their attorney.

21                THE COURT:  Okay.  Were they trying to collect

22    more money, or were they concerned that they were about to be

23    indicted?

24                MR. OLDHAM:  Your Honor, I think it's probably a

25    combination of both.  And I believe that Ms. Grayson -- and I
```

UNREDACTED TRANSCRIPT

1   think the record bears out -- was going to say that they were

2   maybe extorting her.  And she went to the FBI herself right

3   around the same time that that attorney brought those two

4   people in to speak with me.  And, initially, the ATF was

5   involved, and then the FBI got involved.

6                   THE COURT:  Sure.  Okay.  Well, this is

7   interesting.

8                   MR. OLDHAM:  It is an interesting case, Your

9   Honor.

10                  THE COURT:  In the 235 pages disclosed, is this

11  in there?  I mean, I don't know what's in the disclosures and

12  whether there's a separate disclosure, a video.

13                  MR. OLDHAM:  There is, Your Honor.  If -- there

14  is a video.  There was a Facebook search warrant done, Your

15  Honor, on Ms. Grayson's phone; and there was a search warrant

16  performed on the witnesses' phone, Your Honor, just to

17  preserve whatever was on there.

18                  THE COURT:  Sure.

19                  MR. OLDHAM:  What we did have is the video that I

20  described at the very beginning, Your Honor, and then the

21  surveillance video from the apartment complex that I also

22  described.  Those are the two main digital things that we are

23  relying on.

24                  THE COURT:  Sure.

25                  MR. OLDHAM:  The rest was to preserve and to show

UNREDACTED TRANSCRIPT

1  that there was communication between our witness and

2  Ms. Grayson and the activity of both that was so -- there was

3  so much of it on social media to show all the people

4  interacting.

5          THE COURT:  Do we have text messages?

6          MR. OLDHAM:  Not that we're especially relying

7  on, Your Honor, that would be significant.

8          THE COURT:  Okay.

9          MR. OLDHAM:  It is mostly the -- if I could back

10 up, Your Honor.  The very first part is the witnesses from

11 here flying to Dallas to have in-person conversations.  We do

12 have the record of their flight, I think on September 5, Your

13 Honor, to Dallas.  And we also have a -- some sort of mobile

14 platform, I think Cash App, but I'm not positive, a transfer

15 of money to Ms. Grayson to -- from Ms. Grayson to Ms. Johnson

16 to purchase that plane ticket for that first conversation.

17         THE COURT:  Okay.  Can you track the $10,000?

18         MR. OLDHAM:  We cannot, Your Honor.  It was in

19 cash.  Once it came back -- first, there was a transfer of

20 less than that on the Cash App, Your Honor, for the plane

21 ticket.  And then when the $10,000 came back, it was -- by

22 the time I met with the people, they said that it was in

23 large part already gone.

24         THE COURT:  Sure.  What evidence do they have

25 other than the video on the 10,000?

UNREDACTED TRANSCRIPT

1          MR. OLDHAM:  It would just have to be the
2    reliability of our witnesses, Your Honor.
3          THE COURT:  Sure.  And how many Johnsons went --
4    or individuals went to Texas?
5          MR. OLDHAM:  Two Johnsons and a driver, Your
6    Honor.
7          THE COURT:  Okay.  Okay.
8          MR. OLDHAM:  And they drove there.  They were in
9    the lobby for a matter of minutes and turned right back
10   around and came right back, Your Honor, all in the same trip.
11         THE COURT:  What kind of vehicle?
12         MR. OLDHAM:  I think it was a Toyota Camry or
13   another sedan that looks like that, but I think it's a Camry,
14   Your Honor.
15         THE COURT:  Was it rented or owned?
16         MR. OLDHAM:  I believe it was owned by the driver
17   or one of his people or relatives.
18         THE COURT:  And is the driver a witness in the
19   case?
20         MR. OLDHAM:  He is somebody that the FBI has
21   spoken to, Your Honor --
22         THE COURT:  Okay.
23         MR. OLDHAM:  -- I believe.
24         THE COURT:  So we've got the two Johnsons, the
25   driver, and then you have all this electronic material or

UNREDACTED TRANSCRIPT

1   some electronic material?

2            MR. OLDHAM:  Some electronic material, Your

3   Honor.  Also, the other two people who were first subject to

4   the conversation.  And I think it's significant because they

5   discussed them again during that video call and their

6   decisions not to have them do that at that time.  So I think

7   that the conflicts that Ms. Grayson had with both of them

8   would be relevant and significant to show that she has

9   conflict with three people.

10           She has spoken, like the witnesses say, to the

11   witnesses about all three and they're deciding right now is

12   the best time for one of them.  And then she gives reasons

13   why right now is not okay for the other two.  So I think that

14   was significant.  And there is communication between them.

15           Your Honor, there has also been, because this is

16   social media, a lot of posts made since then.  The FBI is now

17   getting those together for a second round.  But it's been

18   happening so often, we were trying to accumulate so that we

19   can turn it over to the attorneys.  Both posts by Ms. Grayson

20   and posts by the other --

21           THE COURT:  -- the other social media person.

22           MR. OLDHAM:  Ms. Grayson is posting on social

23   media about this somewhat, saying:  You don't know the whole

24   story, things are going to happen and things like that.  And

25   then the other -- the two people who are not the victim in

UNREDACTED TRANSCRIPT

1    the indictment have been posting a lot about the case and

2    people responding.  And then the third person, who is the

3    victim, has been talked about a lot.  So there's a lot going

4    on in the case, Your Honor.

5                    THE COURT:  It's still going on?

6                    MR. OLDHAM:  Yes, Your Honor.

7                    THE COURT:  Now, the question is:  Is any of that

8    relevant to the charge in the case?  Some of it might be

9    relevant on an admission side.  I don't know.

10                   MR. OLDHAM:  I believe that there are some

11   admissions made by Ms. Grayson of:  You don't know what they

12   did to me, kind of almost intimating to get me to this point

13   or to what happened.  You don't understand what happened

14   before.

15                   THE COURT:  Sure.  Is her social media business

16   still thriving?

17                   MR. OLDHAM:  I do not know, Your Honor.  But I

18   know that Mr. Grayson and Ms. Grayson are very successful,

19   and I would not be surprised.  I think Ms. Grayson actually

20   coaches other people on how to build a business online.  And

21   like I said, I know that they're both very successful, but

22   I'm not aware of the status of --

23                   THE COURT:  And how much of the -- there are

24   online videos that you have, right?

25                   MR. OLDHAM:  Yes, Your Honor.

UNREDACTED TRANSCRIPT

1          THE COURT:  Okay.  Ms. Grayson, what does she do

2   online?  What is she promoting?

3          MR. OLDHAM:  She promotes credit repair.

4          THE COURT:  Oh, my goodness.

5          MR. OLDHAM:  I think if you give her your

6   personal information, then she can access those reports.  She

7   then goes in and does what she does to help people with

8   credit repair.  And I think she also, like I said, Your

9   Honor, from that, because she has grown her business, now she

10  teaches other people how to do either that or other things.

11  I'm not sure what her teaching does.  But I know that she

12  does do personal coaching and I think seminars.

13          THE COURT:  Okay.

14          MR. OLDHAM:  And that's how she met Ms. Johnson,

15  Your Honor, the very beginning several years before this

16  started.  She reached out to Ms. Johnson because Ms. Johnson

17  is a local person in Memphis, who has a large following on

18  social media.  So Ms. Johnson was able to then advertise

19  Ms. Grayson's business, and I think that helped her gain more

20  traction in this market to have her business grow.

21          THE COURT:  Okay.  That's all helpful.  Do you

22  anticipate any experts in the case?  If you do, we need to

23  get them disclosed right away.

24          MR. OLDHAM:  Yes, Your Honor.  I do not.  I

25  believe that most of these records are standard records that

1    come in in the normal course of a trial and through the

2    normal course of evidence.

3              THE COURT:  Okay.  That's helpful.  Have you been

4    told by the defense if they anticipate any experts?

5              MR. OLDHAM:  I have not, Your Honor.

6              THE COURT:  They have a duty to tell you if they

7    do because you've made your 26 -- you've made your Rule 16

8    disclosures?

9              MR. OLDHAM:  Yes, Your Honor.

10             THE COURT:  Well, let's go back and ask them.

11             Okay.  Mr. Ballin, any experts in this case?

12             MR. BALLIN:  Your Honor, our involvement is

13   relatively recent; whatever the date is, it is.  We are aware

14   of our obligation under the rules to disclose.  There are

15   none to disclose today, as of today.

16             THE COURT:  Okay.  So do you have any experts?

17             MR. BALLIN:  As of today, no, sir, but we realize

18   our continuing duty to disclose if we do have any.

19             THE COURT:  You could have already missed your

20   time period to disclose already under the local rules, but we

21   will make sure that we set a very clear date on that.

22   Sometimes that happens.  It's not good, but sometimes that

23   happens.

24             All right.  And your co-counsel -- you're lead,

25   aren't you?

UNREDACTED TRANSCRIPT

1          MR. SCHOLL:  Yes, Your Honor.

2          THE COURT:  No, I'm sorry.  I'm talking to

3    Mr. Ballin.  You're the only one?

4          MR. SCHOLL:  I'm sorry.  I thought you were

5    talking to me.  I can't see that far, Judge.

6          MR. BALLIN:  Your Honor, I'm carrying the

7    briefcase in this matter.  I'm second chair.  Mr. Scott

8    Palmer actually is in trial in district court in Plano,

9    Texas.

10          THE COURT:  In district court?  Do you know what

11    case he's in?

12          MR. BALLIN:  He told me it was a drug case.

13          THE COURT:  Okay.  We'll check on that.

14          MR. BALLIN:  Yes, sir.

15          THE COURT:  He's in district court in Plano?

16          MR. BALLIN:  That's what he told me.

17          THE COURT:  Well, we'll certainly find out.  How

18    long is he going to be in trial?

19          MR. BALLIN:  He was hopeful to be finished this

20    week.

21          THE COURT:  Okay.  We're checking right now to

22    make sure he's in trial.  Sometimes people think they're

23    going to be in trial, and they're not.  That does happen

24    occasionally, as you know.

25          Okay.  So they need to let you do more than carry

UNREDACTED TRANSCRIPT

1  the briefcase if they want to do well in this case, but

2  that's their choice, right?

3            MR. BALLIN:  If I'm called to do something, I

4  will step forward and do what I do.

5            THE COURT:  Okay.  Well, I'm just saying that

6  certainly, you're extremely competent local counsel, and

7  everybody needs to understand that.  And, of course, you have

8  obligations that are important in the case in terms of acting

9  as local counsel.  So we're looking forward to having you.

10            MR. BALLIN:  Yes, sir.

11            THE COURT:  Okay.  Well, we're going to set a

12  final schedule today.

13            Okay.  Mr. Scholl, you can tell me all about your

14  trip if you want to.

15            MR. SCHOLL:  I'll wait until we're not in court,

16  Judge.

17            THE COURT:  Sure, that's fine.

18            What's our situation again on experts?  There may

19  not need to be any.

20            MR. SCHOLL:  On mine, Your Honor, we don't have

21  any experts to disclose as of today.  My assessment of things

22  at this point, I'm a little bit ahead of everyone else.  I

23  don't anticipate experts on behalf of Mr. Grayson.

24            THE COURT:  Right.  And the reason I was asking

25  some detailed information was to understand how much their

UNREDACTED TRANSCRIPT

1    forensics have been involved.  Doesn't sound like that much

2    actually.

3                    MR. OLDHAM:  No, Your Honor.  In the normal

4    course of downloading, which is what agents can do on their

5    own, we haven't had any sort of expert extractions or

6    anything like that.

7                    THE COURT:  Okay.

8                    MR. SCHOLL:  The only thing I can anticipate,

9    Judge, is that the video that is initially the subject of all

10   this, that was the conversation between Ms. Grayson and

11   Ms. Johnson is not a complete video.  It's our position that

12   the video has been spliced and diced and does not represent

13   the full conversation.  So whether I will need an expert with

14   regards to that aspect of it, I'm not quite sure yet.

15                   THE COURT:  Is this the Texas video when the

16   money or whatever it is was being exchanged?

17                   MR. SCHOLL:  The alleged discussion that there

18   was going to be a contract for -- to have someone eliminated.

19                   THE COURT:  Sure.  But this is the Texas video,

20   the in-person conference?  Or maybe it's not.

21                   MR. OLDHAM:  This would be the one that was on --

22   when you asked what devices were used, this was the one after

23   the Texas --

24                   MR. SCHOLL:  Right.

25                   THE COURT:  It's the one after the Texas meeting?

UNREDACTED TRANSCRIPT

1          MR. OLDHAM:  -- and before the money was

2   allegedly changed hands.  There's that conversation that

3   happens on the devices.

4          THE COURT:  Sure.  And we don't know if it's an

5   iPad or not.

6          MR. OLDHAM:  Right, Your Honor.

7          MR. SCHOLL:  The Texas video is a surveillance

8   video at a condominium complex.  The other video is a video

9   that I'm not quite sure if Ms. Johnson made the video or

10  whatever; but throughout the discovery, it's listed

11  everywhere that the FBI does not have a complete video.  They

12  haven't been able to obtain a complete video.  They have only

13  been able to obtain a portion, which is the portion that we

14  have here.  So our -- well, I'll leave it at that.

15         THE COURT:  What's the date of that video?

16         MR. OLDHAM:  September -- sorry, Your Honor.

17  It's either September 10th or 11th.  I think the video is

18  September 10th, and the trip to Texas bled over into the

19  morning of September 11th.

20         THE COURT:  So September 11, September 10, there

21  is a video.  Who made the video?

22         MR. OLDHAM:  The witness, Ms. Johnson, Your

23  Honor.  And it is a video of her having a video conference

24  call with the defendant, Ms. Grayson.  And you can see

25  Ms. Grayson on the screen.

                    UNREDACTED TRANSCRIPT

1          THE COURT:  To what degree can the company,

2     whoever it was that was supplying the service, provide more

3     information in that regard?

4          MR. OLDHAM:  I don't think that there is more

5     information.  We have that video, and we have done a download

6     of her device.  But I don't know if it's the primary device

7     or the device that took the video.  What we do have is the

8     complete version of what we have, and I don't think we have a

9     way to recover or get more.

10          THE COURT:  And have you turned over all the

11     metadata in connection with the video?

12          MR. OLDHAM:  Yes, Your Honor.  Anything that we

13     have downloaded, we have given completely to counsel.

14          THE COURT:  Can anybody examine the video and

15     tell the degree to which it might have been altered?

16          MR. OLDHAM:  We will -- I will try to do that,

17     Your Honor.

18          THE COURT:  I mean, we need to know.

19          MR. OLDHAM:  Absolutely.  Absolutely.

20          THE COURT:  Sure.

21          MR. OLDHAM:  I don't know if it's -- I think it

22     is a -- the government would submit this is the complete part

23     of the conversation that we have, but it wasn't diced up.

24     But maybe the front and the back are taken out.  But we will

25     do that, Your Honor, if there is any resource to do that.

UNREDACTED TRANSCRIPT

1          THE COURT:  The Johnsons, have they turned over

2   the piece of equipment?

3          MR. OLDHAM:  Yes, Your Honor.  They did turn over

4   her cell phone on which the conversation took place.  And we

5   did do a search warrant on that cell phone.

6          THE COURT:  Okay.

7          MR. OLDHAM:  And we'll look for -- if there is

8   more data, we will try to find that, Your Honor.

9          THE COURT:  Well, the reason I asked about

10  experts is that, apparently, there's going to be some

11  assertion that the video has been materially altered.  And

12  somebody is going to have to tell us about that.  I mean,

13  it's not going to be a lawyer.  I mean, a lawyer can tell us,

14  but it's irrelevant.

15         MR. OLDHAM:  Yes, Your Honor.

16         THE COURT:  But somebody is going to have to tell

17  us about that.  Have you submitted it to the FBI for

18  analysis?

19         MR. OLDHAM:  They have it, Your Honor.  I dont'

20  believe we've submitted it for analysis.

21         THE COURT:  I'm not telling you what to do, but

22  we may as well anticipate everything that's going to occur or

23  might occur.

24         MR. OLDHAM:  Yes, Your Honor.

25         THE COURT:  And then we have to move forward.

UNREDACTED TRANSCRIPT

1          Okay.  Now, I think I need to go over with the

2    Graysons our situation.  You're not in state court.  We are

3    going to move pretty quickly.  Well, actually, move quite

4    quickly.  And so it's going to move along.  Now, that's a

5    good thing typically, but I can't tell how that works out for

6    anybody.  But that's usually better than slow, which is like

7    really expensive.  And it's inconsistent with the Speedy

8    Trial Act and the Constitution, so we don't want to go slow.

9          You're both charged in Count 1, as you know, and

10   it provides that from about August the 26th of 2022 and

11   continuing until on or about September 11, which is certainly

12   an easy day to remember, of 2022, in the Western District of

13   Tennessee and elsewhere, the defendants Ashley Grayson and

14   Joshua Grayson, together with others unknown or known and

15   unknown to the grand jury, did knowingly and intentionally

16   conspire to use and cause another to use a facility in

17   interstate commerce to wit, a cell phone, with the intention

18   that the murder of DH -- I'm not real sure if I ever got the

19   real name -- that DH, a real person, known to the grand jury

20   be committed in violation of the laws of the State of

21   Mississippi and as consideration for the receipt of and

22   promise and agreement to pay money and other items of

23   pecuniary value all in violation of Title 18 United States

24   Code Section 1958.

25          Now, I'm sure that both of you know the charges

UNREDACTED TRANSCRIPT

22

```
 1    well and have reviewed them with counsel, but I usually
 2    confirm that just to be sure because this is the first time
 3    I've seen you.  So, Ms. Grayson, you've gone over the charges
 4    carefully, I'm sure; is that right?
 5              DEFENDANT MS. GRAYSON:  Yes, Your Honor.
 6              THE COURT:  And, Mr. Grayson, you've gone over
 7    them carefully with Mr. Scholl?
 8              DEFENDANT MR. GRAYSON:  Yes, Your Honor.
 9              THE COURT:  Okay.  Now, these do have the penalty
10    of not more than ten years in prison, a $250,000 fine, or
11    both and not more than three years of supervised release, a
12    special assessment of a hundred dollars.  So you do
13    understand the penalties associated with the statute under
14    which you're charged; is that right, Ms. Grayson?
15              DEFENDANT MS. GRAYSON:  Yes, Your Honor.
16              THE COURT:  Okay.  And Mr. Grayson?
17              DEFENDANT MR. GRAYSON:  Yes, Your Honor.
18              THE COURT:  Okay.  Now, obviously, I don't know
19    what happened here.  That's the reason I asked all of those
20    questions at the beginning.  Significant discovery has been
21    made by the government, and I'm under the current impression
22    that the government doesn't anticipate any additional
23    disclosures.  I did ask the questions about forensic
24    examination, and it may be that you decide it's not
25    necessary.
```

UNREDACTED TRANSCRIPT

1        Does the material that you've disclosed seem

2   continuous?

3        MR. OLDHAM:  Yes, Your Honor.

4        THE COURT:  Okay.  All right.  Now, what we do is

5   we have to set real dates, and they've been moving around a

6   little bit.  That's not good.  We don't do that over here if

7   we can avoid it.  So what we're going to do is set a date for

8   final motions.  Now, there was a motion which said that they

9   would want to put a deadline after the motions were filed.

10  Well, that's not going to work.

11       Usually the motions are filed within 14 to 21

12  days of today.  Actually, they would have been filed 14 to 21

13  days from August the 9th, but that didn't happen.

14       Is there a reason that we shouldn't -- are there

15  any statements by either defendant?

16       MR. OLDHAM:  Not that were made to law

17  enforcement, Your Honor.

18       THE COURT:  Okay.  So there's no question about a

19  motion to suppress in that regard?

20       MR. OLDHAM:  I'm not defense counsel but not from

21  my perspective.

22       THE COURT:  Not typically.

23       MR. OLDHAM:  Not something that I would

24  anticipate.

25       THE COURT:  And search warrant?

UNREDACTED TRANSCRIPT

1          MR. OLDHAM:  There is a search warrant of

2    Ms. Grayson's cell phone that I think there could be a motion

3    to suppress on that, Your Honor.

4          THE COURT:  It's a possibility?

5          MR. OLDHAM:  Yes, Your Honor.

6          THE COURT:  Okay.  So everybody knows what the

7    potential motions are, not many but might be one.  Doesn't

8    have to be.  That's usually 14 days from now, and it could be

9    21 days from now.  That's why I was checking on it.  I take

10   it that we found out that Mr. Palmer is actually in trial.

11   So that's good.  If he's not, we need to know when he's going

12   to start.

13         We can't tell yet?

14         CASE MANAGER:  I'm still checking.  I've got

15   somebody working on it.

16         THE COURT:  We'll find out.  Well, we're going to

17   assume that he is in trial, and he's going to finish as

18   opposed to saying he's about ready to start trial, and it's

19   going to be another week or so.

20         Mr. Ballin, you know how to prepare a motion to

21   suppress, anyway, right?

22         MR. BALLIN:  I do.  Your Honor, my recollection

23   is that we have asked for and been granted until November 15

24   to file motions.

25         THE COURT:  You have been.  You were.  That's

UNREDACTED TRANSCRIPT

1   your deadline now.

2                     MR. BALLIN:  Okay.

3                     THE COURT:  And there was some reference that we

4   wanted to -- yes, that's correct.

5                     There was some suggestion that there was some

6   fluidity about that date, and I was trying to remove that.

7   So we're not moving the date because everybody has got the

8   package.  They know what is out there in terms of potential

9   motions.  And they need to either file them or not file them,

10  one of the two.

11                    Yes, sir?

12                    MR. SCHOLL:  I think Mr. Oldham said that they

13  were in the process of getting some additional social media

14  information and maybe a second round of discovery.

15                    THE COURT:  He did say that, but it doesn't seem

16  to be relevant to the charges in the case.  It seems to be

17  only relevant to the point that it might constitute

18  cross-examination.  Is that about right?

19                    MR. OLDHAM:  Yes, Your Honor.  There might be an

20  admission that we might seek to put in in our case in chief.

21                    THE COURT:  Right.

22                    MR. OLDHAM:  But those are --

23                    THE COURT:  If you type on social media:  I did

24  it, but there's a really good reason.  That would probably be

25  important.

UNREDACTED TRANSCRIPT

1        MR. OLDHAM:  Yes, Your Honor.  And those things

2  are public posts.  And, obviously, they need to review it to

3  decide if they need any sort of motion.  But we do plan on

4  getting that together and getting that submitted.  But we do

5  not anticipate a motion that would come out of that.

6        THE COURT:  Yeah.  Well, when is that going to be

7  submitted?

8        MR. OLDHAM:  Your Honor, we do have an e-mail and

9  a call -- well, an e-mail into our FBI agent.  Have not

10  responded yet.  Could we have one week from today to do that?

11        THE COURT:  Sure.

12        MR. OLDHAM:  I don't want to overpromise a

13  timeline, Your Honor.

14        THE COURT:  That's reasonable.  Okay.  You want

15  the 2nd of November?

16        MR. OLDHAM:  Please, Your Honor.

17        THE COURT:  Do you have any idea how much that's

18  going to be?

19        MR. OLDHAM:  I do not, Your Honor.  There have

20  been --

21        THE COURT:  Apparently, there's a war of words

22  going on out there.

23        MR. OLDHAM:  Absolutely, Your Honor.  And there's

24  a lot of people that aren't even involved in the war of

25  words.  So it's going to be a lot, Your Honor.

UNREDACTED TRANSCRIPT

1          THE COURT:  Right.  And we're all thinking about

2    the same thing.  Unless it's got some sort of admission, it

3    probably is not relevant.

4          MR. OLDHAM:  Absolutely, Your Honor.  I agree

5    with that.

6          THE COURT:  There's a bunch of hearsay stuff

7    floating out there with people saying all sorts of things one

8    way or the other.

9          MR. OLDHAM:  Yes, Your Honor.  But I think the

10   context is fairly important, and so I would rather turn over

11   everything we have.

12         THE COURT:  Sure.  And they can actually get the

13   same thing if they actually issue --

14         MR. OLDHAM:  I believe so, Your Honor, or I think

15   they could probably just scroll back through and see all the

16   things.

17         THE COURT:  Sure.  It's available.  Should be

18   available right now to anybody who wants to go look.

19         MR. OLDHAM:  I think it's more available to

20   defense counsel than it would be for us.

21         THE COURT:  Right.  That's what I mean.  Anybody

22   from the defense side who just wants to go look, they can go

23   look.

24         MR. OLDHAM:  I believe so, Your Honor.

25         THE COURT:  I think so too.  We'll set a date for

UNREDACTED TRANSCRIPT

1    the final submission by the government of any further

2    electronic information, which includes any type of -- well,

3    I'll just say electronic information, and that will be

4    November 2.

5             MR. OLDHAM:  Yes, Your Honor.

6             THE COURT:  Now, the defense, like I say, it

7    doesn't sound like it's going to be something that would be

8    the focus really of the case.  The focus will be the earlier

9    material.  So the date that the defense asked for was

10   November the 15th to file any motions.  So we'll keep that.

11            Because this is a social media case and because

12   I'm not familiar with the risk in social media cases, are

13   there special precautions that need to be taken in the case

14   to eliminate inappropriate materials submitted through social

15   media by anybody?  Do you see what I'm worried about?

16   Obviously, we're all aware of the case that's going on in New

17   York, and I don't know that there's a problem.  But I point

18   that out because there might need to be something.

19            MR. OLDHAM:  Your Honor, I believe --

20            THE COURT:  All of you could enter a joint

21   protective order, and we could try to effect that.  I don't

22   like doing it because it's an area I'm not familiar with so

23   much.  It's got some First Amendment-related issues, but if

24   the parties agree, maybe there's something that should be

25   done.  I just don't know.

UNREDACTED TRANSCRIPT

1      MR. OLDHAM:  Yes, Your Honor.  I think that's a

2  topic that I haven't considered, but we'll speak with defense

3  counsel about that.

4      THE COURT:  Okay.  And it looks like,

5  Ms. Grayson, that there might need to be a conversation, as

6  you pointed out, on that.  I don't know if there's anything

7  we can do, but we certainly don't want to raise -- we want to

8  raise it now and not later.

9      Okay.  All right.  Now, the case needs to be

10  reset.  And the question is -- we've got it down for a

11  four-day trial.  And there will be a final report date.  But

12  maybe we need to figure out when we should reset it.

13      Because, Mr. Ballin, you've got to coordinate

14  with your co-counsel.  When do you think?

15      MR. BALLIN:  Your Honor, I spoke with Mr. Palmer

16  about trial dates thinking that Your Honor would want to go

17  ahead and set that.

18      THE COURT:  Right.

19      MR. BALLIN:  He, in my discussions with him,

20  appears to be a lawyer that tries a lot of cases.

21      THE COURT:  It looks that way.

22      MR. BALLIN:  He's given me some dates that he

23  doesn't have jury trials.

24      THE COURT:  Okay.

25      MR. BALLIN:  May I be so bold as to share with

UNREDACTED TRANSCRIPT

1  the Court those dates?

2              THE COURT:  Absolutely.

3              MR. BALLIN:  January 29, February 12, March 4 or

4  March 25.

5              THE COURT:  Mr. Scholl, your thoughts?

6              MR. SCHOLL:  I'm looking at my schedule right

7  now.  I think I'm good all of those weeks.  I have a murder

8  trial set the week before, but I think I'm free pretty much

9  most of those weeks, Your Honor.

10             THE COURT:  The government?

11             MR. OLDHAM:  That 29th day, Your Honor, I know

12  that I'm free that date.

13             THE COURT:  We have a case set.

14             MR. OLDHAM:  Okay.  I'm sorry, Judge.  I went to

15  the first one because I thought --

16             THE COURT:  No, no.  That's fine.

17             MR. SCHOLL:  I'm good on February 12 also, Your

18  Honor.  Actually, I'm good on all of them, Your Honor.

19             THE COURT:  Well, we've set something on February

20  the 12th because that is, as everybody knows -- does anybody

21  know the importance of February 12th here?  Nobody is going

22  to bet on you guys.  What's the importance of February

23  the 12th?

24             MR. BALLIN:  It's just a date that Mr. Palmer

25  said that he was available.

UNREDACTED TRANSCRIPT

1            THE COURT:  That's not the reason it's important,

2    but that's a nice thought.

3            MR. BALLIN:  Oh, I'm sorry.

4            THE COURT:  It's Washington's birthday.  Okay.

5            MR. OLDHAM:  Not my parents' anniversary, Your

6    Honor?  That's not the date that you were talking about,

7    Judge?

8            THE COURT:  Is it their anniversary?

9            MR. OLDHAM:  It is, Your Honor.

10            THE COURT:  That's wonderful.  I think that's

11    probably not going to work for us.

12            CASE MANAGER:  We're set for Gomez that week.

13            THE COURT:  We are set for Gomez.

14            CASE MANAGER:  It's likely to go.

15            THE COURT:  It's likely to go, yeah.

16            March the 4th?  If we give you a date that far

17    out, it's very unlikely that it will change.

18            CASE MANAGER:  That's good.

19            THE COURT:  March 4.  Trial March 4.

20            This is a likely trial, right, Mr. Ballin?

21            MR. BALLIN:  Yes, sir.  Although Mr. Oldham and I

22    and Mr. Palmer will continue to work toward a possible

23    resolution, but at this point, we're looking to try it.

24            THE COURT:  Right.  It just sounds like a case

25    that has to be tried.  It may not be, but it sounds like one.

UNREDACTED TRANSCRIPT

1        MR. BALLIN:  Your Honor, while I'm on my feet.

2   Your Honor asked Mr. Oldham about the video, if it appears to

3   be disjointed or stopped at some point, and those were my

4   words.

5        THE COURT:  I did.

6        MR. BALLIN:  I think the issue is going to be on

7   the front end and the back end --

8        THE COURT:  Okay.

9        MR. BALLIN:  -- whether or not it's recorded from

10  the very beginning, and if the recording stopped before the

11  conversation --

12       THE COURT:  Sure.  So there's no issue about the

13  video -- the portion you have?

14       MR. BALLIN:  The portion that we have appears to

15  be complete.  I'm of the opinion the issue is going to be

16  before the recording started, the conversation had already

17  begun, and the conversation continued after the recording

18  stopped.

19       THE COURT:  Okay.  Well, everybody understands

20  what the issue is, and that's more of an evidentiary matter

21  for a jury to determine.  So that's probably how that will

22  work out.

23       Okay.  Now, we've got you down for trial on March

24  the 4th.  I want to tell Mr. and Ms. Grayson, we always set a

25  final report date, and we always set a date for submission of

UNREDACTED TRANSCRIPT

1   a plea agreement telling everybody that the Court doesn't

2   care if you plead or not.  In fact, I often tell people, you

3   have a constitutional right to go to trial.  And I don't have

4   anything to do with the other.  I really don't.  But we do it

5   because there needs to be some finality in terms of where we

6   are and any discussions with the government.  I don't even

7   encourage discussions -- I probably wouldn't talk to the

8   government myself.  I'm kidding about that.  But my point is

9   that that is really between you, your counsel and the

10  government.  Not the Court at all.  But we respect the fact

11  that we've got to know if something is going to happen.  And

12  that's the reason we set it.

13          So let's set a final report date.  And we will

14  need Mr. Palmer here because we've got to see him and make

15  sure that everything is going to go correctly.

16          CASE MANAGER:  Your Honor, we could set that

17  either -- for either Friday, February 9 at 10:45, or we could

18  set it for February the 16th at 9:30.

19          MR. SCHOLL:  The 16th is good for me.

20          THE COURT:  Okay.  Is that a Friday?

21          CASE MANAGER:  That's a Friday, Your Honor.

22          THE COURT:  We probably ought to set it on a

23  Thursday.

24          MR. BALLIN:  How about the 16th?

25          THE COURT:  The 16th works better?

UNREDACTED TRANSCRIPT

1    MR. BALLIN:  Yes, sir, because he said he would

2  be available to try the case February 12.  So that's my

3  suggestion is we go with the 16th of February.

4    THE COURT:  Is that okay, Mr. Scholl?

5    MR. SCHOLL:  That's fine with me, Judge.

6    THE COURT:  Sure.  Sure.

7    What about the government?

8    MR. OLDHAM:  I'm available, Your Honor.

9    THE COURT:  What time, 9:30?

10    CASE MANAGER:  9:30, Your Honor.

11    THE COURT:  Okay.  Now, if there is going to be a

12  plea, again, I have no interest in that at all; but I have to

13  give you a date, and that would be due by Valentine's Day,

14  the 14th.

15    MR. OLDHAM:  Noon, Your Honor?

16    THE COURT:  Noon.  Yes.

17    Now, Mr. and Ms. Grayson, often it seems to

18  individuals that are in a criminal proceeding in state court

19  or federal court that the lawyers do all the talking, and

20  they do all the work and analysis.  I'm sure that both of you

21  understand that's not the case at all.  You know, you have

22  the obligation, which has already been reviewed in the

23  earlier order, to go through the materials yourself because

24  only you can assess these things and assess how you want to

25  proceed.

UNREDACTED TRANSCRIPT

1           The lawyers can represent you, but they can't do

2   something that you don't want to do.  In other words, they

3   have to coordinate with you and be your spokesperson here in

4   court, but nothing else.  Really, it is your case.  So I just

5   remind everybody, you've got those materials.  If you haven't

6   gotten the package of discovery --

7           Ms. Grayson, do you have the package already?

8   You should.

9           DEFENDANT MS. GRAYSON:  Yes, Your Honor.

10          THE COURT:  Mr. Grayson?

11          DEFENDANT MR. GRAYSON:  Yes, Your Honor.

12          THE COURT:  Okay.  Well, that's important.  We

13  just encourage you to look at it carefully and, of course,

14  consult with counsel.  The time will be excluded in order --

15  actually, it was requested by the defense through March

16  the 4th.

17          We're reflecting, Mr. Ballin, that that is to

18  allow for defense preparation; is that correct?

19          MR. BALLIN:  That's correct, Your Honor.

20          THE COURT:  And same thing, Mr. Scholl?

21          MR. SCHOLL:  Yes, Your Honor, move for exclusion

22  of time for time to prepare.

23          THE COURT:  Okay.  No problem.  I think we've

24  covered what we need to.  I just want to emphasize that we

25  will try very, very hard to stay on our current schedule.  We

UNREDACTED TRANSCRIPT

1  understand the difficulty, stresses, et cetera, that it

2  causes individuals who are accused of a crime in a federal

3  court, and it's needs to get over.  We just need to get it

4  done, whatever is going to happen.  So we will try very, very

5  hard to stay with the schedule.

6            And anything else, Mr. Ballin, as to Mr. Palmer

7  that I need to know?

8            MR. BALLIN:  No, Your Honor.

9            THE COURT:  Okay.  By the way, we've probably

10 checked it out.  He's hopefully wrapping up closing

11 arguments, but we haven't heard it yet.

12           CASE MANAGER:  Working on it, Your Honor.

13           THE COURT:  We'll find out.  So, hopefully, he is

14 wrapping up what he was doing there and can now concentrate

15 on this case.

16           I think that concludes everything.

17           Anything else from the government?

18           MR. OLDHAM:  No, Your Honor.

19           THE COURT:  Okay.  I can set an absolute never

20 talk to me again about it deadline on any expert reports from

21 anybody.  Maybe I should do that.  What do you think?

22           MR. OLDHAM:  Your Honor --

23           THE COURT:  I mean, you're not contemplating one?

24           MR. OLDHAM:  I am not, but the Court did raise a

25 concern that we are definitely going to look into.  So a

UNREDACTED TRANSCRIPT

37

1   deadline would be appreciated.  Could we please have 30 days,

2   Your Honor?

3              THE COURT:  Sure.  That's very reasonable.  Okay.

4   That puts you almost in the Thanksgiving period.  So let me

5   give you -- well, not quite.  Let me give you to November

6   the 30th.  This is for everybody.  Deadline for any party who

7   contemplates calling of an expert to disclose their expert

8   and their expert report by November 30.

9              Again, nobody has indicated they intend to do

10  this, but recently it's become clear that in cases like this,

11  we should set a deadline.

12             Any problem, Mr. Ballin?

13             MR. BALLIN:  No, Your Honor.

14             THE COURT:  And, Mr. Scholl, anything else?

15             MR. SCHOLL:  No, Your Honor.

16             THE COURT:  Good deal.  I think that's it.

17             (Adjournment.)

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT

38

# C E R T I F I C A T E

1

2

3

4        I, TINA DuBOSE GIBSON, do hereby certify that the

5  foregoing 37 pages are, to the best of my knowledge, skill

6  and abilities, a true and accurate transcript from my

7  stenotype notes of the SCHEDULING/STATUS CONFERENCE hearing

8  held on the 26th day of October, 2023, in the matter of:

9

10  UNITED STATES OF AMERICA

11  vs.

12  ASHLEY GRAYSON AND JOSHUA GRAYSON

13

14

15  Dated this 7th day of November, 2023.

16

17

18

19                    S/Tina DuBose Gibson

20                    _____
                      TINA DuBOSE GIBSON, RPR, RCR
21                    Official Court Reporter
                      United States District Court
22                    Western District of Tennessee

23

24

25

UNREDACTED TRANSCRIPT