1

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
 2                      WESTERN DIVISION

 3   _____
                             |
 4   UNITED STATES OF AMERICA,|
                             |
 5           Plaintiff,       |
                             |
 6   vs.                      |   NO. 23-CR-20121
                             |
 7   ASHLEY GRAYSON AND       |
     JOSHUA GRAYSON,          |
 8                            |
             Defendants.      |
 9
     _____
10

11

12

13               TRANSCRIPT OF THE TRIAL

14                     BEFORE THE

15              HONORABLE JON P. MCCALLA

16

17              PRELIMINARY INSTRUCTIONS

18

19                       TUESDAY

20                  MARCH 26, 2024

21

22

23
                 TINA DuBOSE GIBSON, RPR, RCR
24                   OFFICIAL REPORTER
                FOURTH FLOOR FEDERAL BUILDING
25               MEMPHIS, TENNESSEE 38103
```

UNREDACTED TRANSCRIPT

1             A P P E A R A N C E S

2

3        Appearing on behalf of the Government:

4             PATRICK NEAL OLDHAM
              BRYCE PHILLIPS
5             United States Attorney's Office
              167 N. Main Street, Suite 800
6             Memphis, Tennessee 38103
              (901) 544-4231
7             neal.oldham@usdoj.gov
              bryce.phillips@usdoj.gov
8

9        Appearing on behalf of the Defendant Ashley Grayson:

10            SCOTT H. PALMER
              MICHAEL LEVINE
11            Scott H. Palmer, PC
              15455 Dallas Parkway
12            Suite 540
              Dallas, Texas  75001
13            (214) 987-4100
              scott.palmer@palmerperlstein.com
14            michael.levine@palmerperlstein.com

15

              LESLIE I. BALLIN
16            Ballin, Ballin & Fishman, PC
              200 Jefferson Avenue
17            Suite 1250
              Memphis, Tennessee 38103-2007
18            (901) 525-6278
              lballin@bbfpc.com
19

20

         Appearing on behalf of the Defendant Joshua Grayson:
21

              MICHAEL E. SCHOLL
22            The Scholl Law Firm
              200 Jefferson Avenue
23            Suite 1500
              Memphis, Tennessee 38103
24            (901) 529-8500
              mike@scholl-law-firm.com

25

                    UNREDACTED TRANSCRIPT

```
 1                         TUESDAY

 2                      MARCH 26, 2024

 3                 ----------------------

 4

 5          THE COURT:  Everyone can be seated.  Ladies and

 6   gentlemen, you're now the jury in this case.  I'm going to

 7   take a few minutes -- it's actually a little longer -- to

 8   tell you something about your duties as jurors and to give

 9   you some preliminary instructions.

10          At the end of the trial, I will give you detailed

11   instructions on the law, and those instructions will control

12   your deliberations.  These are merely for your guidance.

13   They're important, but they are for your guidance so that you

14   can make sense of materials as they're submitted.  At the end

15   of the case, again, I will give you detailed instructions on

16   the law, and those instructions are the instructions you must

17   follow in making your decision in this case.

18          This is a criminal case brought by the United

19   States Government, and the charges contained against the

20   defendants are contained in the indictment.  And while I've

21   read it to you a long time ago, I'll read it to you again.

22   Again, it's short, the length doesn't make any difference,

23   and it's not binding on you in any way.  It's not evidence.

24   As we talked about, it's just a way to give notice as to what

25   the charges are.
```

PRELIMINARY INSTRUCTIONS                                    4

1          The indictment in this case reads as follows:

2          On or about August 26 of 2022, and continuing

3    until on or about September 11, 2022, in the Western District

4    of Tennessee and elsewhere, the defendants, Ashley Grayson

5    and Joshua Grayson, together with others known and unknown to

6    the grand jury, did knowingly and intentionally conspire to

7    use and cause another to use a facility of interstate

8    commerce, to wit, a cell phone with the intent that the

9    murder of DH, a real person known to the grand jury, be

10   committed in violation of the law of the State of

11   Mississippi.  And as consideration for the receipt of and

12   promise and agreement to pay money, and other items of

13   pecuniary value, all in violation of Title 18 United States

14   Code Section 1958.

15         Now, those are the charges in this case, and each

16   defendant has pled not guilty to the charge contained in the

17   indictment.  And each defendant is presumed by the law to be

18   innocent unless and until proved guilty beyond a reasonable

19   doubt.  It will be your duty to decide from the evidence to

20   be presented whether the defendant that you're considering --

21   remember, we consider each defendant separately -- whether

22   the defendant that you are considering is guilty or not

23   guilty of the crime charged.

24         You will decide from the evidence what the facts

25   are, and your verdict will be based on those facts.  You are

UNREDACTED TRANSCRIPT

1  the sole judges of the facts.  You must then apply those

2  facts to the law as I give it to you, and in that way reach

3  your verdict.  You must follow the law whether you agree with

4  it or not.

5        You should not take anything that I may say or do

6  during the trial as indicating what I think of the evidence

7  for what your verdict should be.  In fact, I will endeavor

8  not to say anything to suggest that because that is your

9  decision and your decision alone.

10        The defendants have been charged with a single

11  crime in this case, and there are two defendants in this

12  case, but as we've already said, they are to be tried

13  separately.  That is, the Government has a burden of proving

14  as to each defendant the facts necessary to establish beyond

15  a reasonable doubt the Government's asserted claim, that is,

16  the indicted charge against that defendant.

17        It is correct that your decision on one

18  defendant, whatever it is, guilty or not guilty, should not

19  influence your decision on the other defendant.  In other

20  words, you really do keep them separate, and you have to

21  decide them individually.

22        Now, some of the people who might have been

23  charged in this case will not be going on trial.  I don't

24  know if we'll hear from anybody in that category, but I'm

25  looking to everybody to make sure I understand that.  You may

UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                                    6

1    hear some other names.  That doesn't matter.  There's no

2    requirement that all members or all participants in a crime

3    or a conspiracy be charged and prosecuted or tried together.

4    So do not be concerned about that.

5          I'm going to go over in a moment the elements of

6    the offense, and I'll tell you about them.  But, again, at

7    the end of the case, you'll get a detailed set of

8    instructions, and you get a written set of instructions for

9    all of you to refer to.  So those are the instructions you'll

10   rely on.  These are simply to help you as you go through the

11   process of listening to the case.  As you know, of course,

12   the indictment is no evidence of guilt at all.

13         Now, the Government has a strict or heavy burden

14   in this case, but I'm going to tell you at the outset the

15   general instruction on burden of proof.  The Government does

16   have a strict or heavy burden, and that's proper for anyone

17   to point that out, and the Government has to accept that and

18   acknowledge that.  But it's not necessary that a defendant --

19   an individual defendant's guilt be proved beyond all possible

20   doubt.  It's only required that the Government's proof

21   exclude any reasonable doubt concerning a defendant's guilt.

22         A reasonable doubt is a real doubt based upon

23   reason and common sense after careful and impartial

24   consideration of all of the evidence in the case.  Proof

25   beyond a reasonable doubt, therefore, is proof of such a

1  convincing character that you would be willing to rely and

2  act upon it without hesitation in the most important of your

3  own affairs.

4           At the end of the case, after you've considered

5  all the evidence and deliberated among yourselves, if you are

6  convinced that the defendant has been proven guilty beyond a

7  reasonable doubt, then you should say so.  And if you're not

8  convinced, you should say so also.

9           During the case, you've already heard references

10  to evidence.  Now, evidence is defined so that we have

11  reliable information to submit to the jury.  The term

12  "evidence" includes the testimony of the witnesses, the

13  exhibits admitted in the record, any facts as to which the

14  parties stipulate.  I'm not sure there will be any

15  stipulations.  They aren't required to.  But sometimes

16  there's stipulations.  That is, we agree that such and such

17  is a fact.  It's not necessary to put any proof on about that

18  and any facts as to which the Court takes judicial notice.

19           Of course, remember that anything the lawyers

20  say, with all due respect to the lawyers, is not evidence in

21  the case.  And that's already -- the point has been made in

22  the voir dire process.

23           It is your own recollection and interpretation of

24  the evidence that controls the case.  And, of course, what

25  the lawyers say, it's not going to be binding on you.  In

PRELIMINARY INSTRUCTIONS                                     8

1  considering the evidence -- by the way, about judicial

2  notice, so it doesn't sound like I really can do very much.

3  I can only take judicial notice of the fact that it's so

4  obvious that, frankly, all of you would know.  So I can take

5  judicial notice that Memphis, Tennessee, is in the Western

6  District of Tennessee.  You don't really need any help on

7  that one.

8           I can actually take judicial notice of days on a

9  calendar.  Now, I have to check and make sure that all of it

10 is right, but if I'm asked to take judicial notice that a

11 certain day was a Thursday or Friday or Sunday, I can take

12 judicial notice of that.  It's another very ascertainable

13 fact, but I cannot take judicial notice of anything that

14 really is capable of being disputed.  I cannot do that.

15          Now, in considering the evidence in the case, you

16 will have to make deductions and reach conclusions which

17 reason and common sense lead you to make.  And you should not

18 be concerned about whether the evidence is direct evidence or

19 circumstantial evidence.  And this is an important concept,

20 so you need to know it at the outset.

21          Of course, direct evidence is the testimony by

22 one who asserts actual knowledge of a fact such as an

23 eyewitness.  Circumstantial evidence is proof of a chain of

24 facts and circumstances, indicating that a defendant is

25 either guilty or not guilty.  The law makes no distinction

UNREDACTED TRANSCRIPT

1  between direct evidence and circumstantial evidence.  Of

2  course, it is up to you, the jury, to decide how much weight

3  to give to any evidence.

4          You should also, as I've indicated, you should

5  also not assume from anything that I may say or do, that I

6  have any position or wish to convey any position concerning

7  any evidence in the case.  I will, however, give you

8  instructions sometimes if evidence cannot be received for a

9  particular reason.  And we'll talk about that in a moment.

10         In saying that you must consider all of the

11 evidence, I do not mean that you must accept all of the

12 evidence as true and accurate.  You should decide in this

13 case -- and you will need to decide in this case -- whether

14 you believe each witness, whether you believe what each

15 witness has to say, and how important that witness's

16 testimony was.  In making that decision, you may believe or

17 disbelieve any witness in whole or in part.

18         Also, the number of witnesses testifying

19 concerning any particular dispute is not controlling.  You

20 may decide that the testimony of a smaller number of

21 witnesses concerning any fact in dispute is more believable

22 than the testimony of a larger number of witnesses to the

23 contrary.

24         In deciding whether you believe or disbelieve any

25 witness, I suggest that you ask yourself a few questions:

UNREDACTED TRANSCRIPT

1          Did the witness impress you as one who was

2   telling the truth?  Did the witness have any particular

3   reason not to tell the truth?  Did the witness have a

4   personal interest in the outcome of the case?  Did the

5   witness seem to have a good memory?  Did the witness have the

6   opportunity and ability to observe accurately the things the

7   witness testified about?  Did the witness appear to

8   understand the questions clearly and answer them directly?

9          Would you like some water?  Are you okay?

10          THE JUROR:  I'm just getting a little warm, and

11   it makes me cough.

12          THE COURT:  Okay.  No, I will tell you we're not

13   here to make your lives miserable, and so we do let you bring

14   a bottle of water in here.  We don't let you bring coffee,

15   tea, or things that have color in it because they replace

16   this carpet about once every 35 years.  And so we can't do

17   that.  But tell us, if you need something, and we will try to

18   take care of it.

19          We're talking about evaluating a witness's

20   testimony and credibility.  You will want to also ask:  Did

21   the witness's testimony differ from the testimony of other

22   witnesses or from the evidence and testimony that you do

23   believe?  You should ask yourself whether the evidence tends

24   to prove that a witness has intentionally testified falsely

25   or whether the evidence simply shows that the witness said

PRELIMINARY INSTRUCTIONS                                    11

1    something or failed to say something or do something which is

2    simply a mistake or error.  So you have to use common sense

3    in evaluating testimony.

4              To put it more directly, you should keep in mind

5    that a simple mistake by a witness does not necessarily mean

6    that the witness was not telling the truth as that witness

7    remembers it because people naturally tend to forget some

8    things or remember other things inaccurately.

9              So if a witness has made a misstatement, you need

10   to consider whether the misstatement was simply an innocent

11   lapse of memory or an intentional falsehood, and that may

12   depend on whether the testimony was as to an important fact

13   or only an unimportant detail.

14             I will remind you at this time -- and I do not

15   know what the final instruction will be on this, but I want

16   you to remember at all times, that each defendant is here

17   individually.  Each defendant has an absolute right not to

18   testify guaranteed by our Constitution and Bill of Rights.

19             The fact that a witness may not testify cannot be

20   considered by you in any way.  Do not even discuss it in your

21   deliberations.  Remember at all times that it is up to the

22   Government to prove each defendant individually guilty beyond

23   a reasonable doubt.  It is not up to an individual defendant

24   to prove that he or she is innocent.

25             At the end of the case, I'm going to give you

UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                              12

1  some additional instructions along this line, but I think

2  we'll wait because this gives you the idea of what we're

3  doing.

4            Now, there will be witnesses other than,

5  obviously, the -- well, we don't know who will testify, but

6  there will be witnesses who may be subject to the analysis in

7  terms of whether to believe them or not.  That's what we're

8  talking about really earlier.  So just keep that in mind.

9            There will be some law enforcement witnesses that

10  will testify.  Now, we all know that we shouldn't treat them

11  differently from other witnesses.  They don't get special

12  extra treatment or negative treatment.  Law enforcement

13  witnesses are someone who is employed by the city, the

14  county, the state, or federal government in the operation of

15  enforcement of the laws of the United States.

16            That doesn't mean that his or her testimony is

17  deserving of more or less consideration or greater or lesser

18  weight than that of an ordinary witness.  So in reviewing the

19  testimony of the law enforcement witnesses, you would give to

20  that testimony the same type of consideration that we talked

21  about earlier.

22            There may be some testimony from someone who may

23  testify -- I'm not sure about this -- as an opinion witness,

24  a person who by education or qualification is able to give an

25  opinion on a particular fact in the case.

UNREDACTED TRANSCRIPT

1          Now, if that happens, you just have to remember a
2    couple of things.  You cannot let that person substitute
3    their opinion for your judgment because you make a decision
4    as to all the facts.  You do not have to accept the testimony
5    of an opinion witness.  It will be up to you to decide how
6    much weight to give such testimony, if any.  And, of course,
7    you will want to consider, if you reach those questions, the
8    witness's qualifications and how that particular witness
9    reached that witness's conclusions.

10          Also consider the other factors that we talked
11   about in weighing the credibility of witnesses if someone is
12   allowed to express an opinion on an issue before you.

13          There may be some testimony about other acts that
14   may have been committed by someone in the case.  If that
15   occurs, I will give you some special instructions about how
16   you should deal with that at the time.  We all understand
17   that this is about the charge contained in the indictment,
18   and it is not about whether somebody did something five years
19   ago or ten years ago in this case.  It's simply not going to
20   have application generally.

21          So if it does occur, and that's allowed, I will
22   give you some specific instructions after counsel have made a
23   certain showing as to how you might consider that additional
24   testimony about what we sometimes refer to as other acts by
25   either a witness or someone else.

1              At the end of the case, you're going to have to

2     decide this case based on what you hear and see here in the

3     courtroom and based on the exhibits that are received.  That

4     is based on the evidence in the case.  You may hear some

5     recorded testimony, but always remember that if you do hear

6     that, it is not what somebody says the recording says, it is

7     what you can ascertain it says.  I hope that makes sense.  In

8     other words, you have to listen to it and make sure that you

9     understand what that was.

10             Also at the end of the case, you're not going to

11    have a transcript even though I can read almost everything

12    that's said in the courtroom up here.  That technology is not

13    something that we make available to you -- and we can make it

14    available to counsel, but they have to make arrangements for

15    it -- yet, and that's because it's just an initial draft

16    transcript.  So we don't have a chance to give you a full

17    transcript, so you're not going to get a transcript.

18             There's another reason.  It takes about two hours

19    of work to prepare a single hour of testimony from the Court,

20    so it would be a long time waiting on the transcript.  And

21    the next thing is that a transcript doesn't show the way the

22    person said it.  It only shows the words on the page.  And

23    every last one of you has been in a conversation with someone

24    in which they ended up saying yes or no to part of the

25    conversation, but you actually understood that it meant the

UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                               15

1    opposite.  It didn't really mean yes or no.  It actually

2    meant an affirmative or negative because of the way that

3    conversation evolved, and you could see them and you could

4    understand them.  So sometimes even words as simple as yes or

5    no can be misconstrued if you're just looking at a

6    transcript.  And can you imagine what it's like when you have

7    longer answers with more complicated inflexion, pauses, and

8    so forth.

9           So you don't get a transcript because that would

10   take away a fundamental function of the jury, which is to

11   listen to the testimony and to make your own determination

12   about what you believe and do not believe and also to use

13   your common sense as you listen to it so you can understand

14   what the actual meaning is.  That's very important.  So we

15   don't make a transcript available.

16          There will be a day sometime in the next, you

17   know, years where we may be able to do something differently,

18   but we cannot really do that now.  So you're not going to get

19   a transcript.  So what are you going to do?

20          First of all, you're going to listen really

21   carefully and make your decision based on what is said and

22   observed here in the courtroom, but we do allow you to take

23   notes.  Somebody brought a notepad out with them.  That's

24   fine.  You don't need to take notes during my part because I

25   give you written instructions later on.  You are allowed to

UNREDACTED TRANSCRIPT

1    take notes.  Sometimes that's helpful, but I'm going to tell

2    you a couple things about that.

3              The first thing is that at the end of the trial,

4    you're going to get a document, a list.  It's called a

5    witness list and exhibit list.  It's going to list each of

6    the witnesses who testified.  So you don't really -- I mean,

7    you can write it down if you want to.  That's perfectly fine,

8    but you're going to get an official list.

9              The second thing is that that list will also

10   include a list of the exhibits.  So you don't have to write

11   that down.  You're going to know what the exhibits are.

12             You're also going to get the exhibits themselves.

13   And if the exhibits include something that's recorded, you'll

14   get the ability to play it back.  So you're going to get all

15   of those things.  So you need to be mindful that those are

16   things that you're going to have to let you refresh your

17   memory as you go back through and make your decisions.

18             But do remember that you need to pay close

19   attention to testimony that's given because that is what

20   you're going to have to rely on in making your ultimate

21   decisions in this case.

22             All of you know that you should not take as

23   evidence any statements of counsel made during the trial.  If

24   counsel stipulates to a fact -- and I'm not aware that they

25   will be, but I'll look out there one more time, and they

PRELIMINARY INSTRUCTIONS                              17

1    might later on.  If they stipulate to a fact, then that fact

2    will be stated to have been stipulated to or admitted by

3    counsel, and you may regard that fact as conclusively

4    established with no further proof required in the case.

5              As to questions that are asked, listen carefully.

6    As to any question that is asked as to which an objection is

7    sustained, you must not speculate as to what the answer would

8    have been.  And you must assume that the answer would be of

9    no value to you.

10             You may not consider for any purpose any

11   insinuation of a question.  The fact is questions are not

12   evidence.  The answer is the evidence.  And if there's a

13   misconnect between the question and the answer, you can only

14   consider the answer.  You can consider the answer when they

15   connect to each other for the purpose of helping to

16   understand, that is, understanding what the answer was.

17             But if somebody asks a question and the witness

18   goes off on some nonrelated subject, then we don't consider

19   the question.  We can consider the response, but, of course,

20   it's problematic if the witness is doing that.  And we'll try

21   to deal with that if necessary.  So you must never speculate

22   to be true any suggestion by a question asked a witness.  The

23   question is not evidence and is only to be considered as it

24   gives meaning to the answer.

25             Now, I read the indictment to you earlier.  And

UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                                    18

1   I'm going to tell you about the law that generally applies in
2   this area.  By the way, at the end of the case, you'll
3   consider all the evidence that you have in the case.  You
4   will want to do that.  And the indictment in this case is
5   we've referred to it as a murder for hire case.

6          Now, it's got kind of an inflammatory sound, so
7   don't let that affect you.  The questions is:  Are the
8   elements that are required to be proven, proven by the
9   Government with proof beyond a reasonable doubt.

10         Count 1, the only count in this case, accuses the
11  defendants of conspiring with each other and with others
12  known and unknown to use and cause use of a facility of
13  interstate commerce, a cell phone, with the intent that the
14  murder of DH be committed in violation of the law of the
15  State of Mississippi.  And as consideration for the receipt
16  of and promise and agreement to pay money and other items of
17  pecuniary value in violation of Title 18 United States Code
18  Section 1958, in order to be found guilty of that offense,
19  the Government has to prove certain elements or components
20  beyond a reasonable doubt.  Each one has to be proven beyond
21  a reasonable doubt.

22         First, that the defendant that you're
23  considering -- I'm going to say it that way a lot of times
24  because it has to be specific as to each defendant -- as to
25  the defendant that you're considering, conspired to cause

UNREDACTED TRANSCRIPT

1    another person to use a facility of interstate commerce,

2    essentially a cell phone.

3           Second, that the defendant did so -- the

4    defendant you're considering did so with the intent that a

5    murder be committed in violation of the laws of the State of

6    Mississippi.  And that's got the intent component.  That was

7    not by accident or mistake.  It was with the intent that a

8    murder be committed in violation of the laws of the State of

9    Mississippi.

10          And, third, that the murder was to be committed

11   as consideration for the promise or agreement to pay

12   something of pecuniary value.  You were going to pay

13   something for it or transfer something for it or give some

14   type of consideration for it, but that the murder was to be

15   committed as consideration for the promise or agreement to

16   pay anything of pecuniary value.  It could be money.  It

17   could be other things that you were going to get in

18   connection with an agreement to commit that crime.

19          Now, a conspiracy is a kind of criminal

20   partnership, and I'm going to say this to be really clear.  A

21   marriage is a kind of partnership, but that's not what we're

22   talking about.  That's not the same thing.  The fact that

23   you're married to somebody does not meet this definition.

24          And, Mr. Scholl, did I get that right?

25          MR. SCHOLL:  Absolutely, Your Honor.

UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                                    20

1           THE COURT:  Well, and the thing is we try to be

2    very clear about that throughout.

3           A conspiracy is a kind of criminal partnership.

4    For you to find a defendant guilty of this crime, the

5    Government must prove each and every one of the following

6    elements beyond a reasonable doubt, and this relates to

7    conspiracy.  That's a component of what we're taking about.

8    So what you've got is components, three of them, and then you

9    can have components within that.  It's kind of like, if you

10   did a diagram in high school or earlier of a sentence, so

11   we're going to break that down.

12          First, that two or more people conspired or

13   agreed to commit the crime of murder for hire.  So you have

14   to have an agreement.  It's not formal.  You don't have to

15   have a document.  In fact, almost no conspiracies have

16   something like -- some might, but almost none have something

17   like that.  But two or more people agreed to commit the crime

18   of murder for hire.  They conspired to do so.

19          Well, the second thing is that the defendant that

20   you're considering knowingly and voluntarily joined the

21   conspiracy.  Now, they can be part of the conspiracy from the

22   very beginning.  In fact, they could be the first two people.

23   But the person you're considering has to have become part of

24   that, whether they are from the very beginning or whether

25   they're a little later on.

UNREDACTED TRANSCRIPT

1          Third, that a member of the conspiracy did

2    something, some act described for the purpose of advancing or

3    helping the conspiracy.

4          Now, I'm going to talk about counsel about some

5    of these instructions because they've submitted them to me,

6    and I may refine them a little later on because there may be

7    a little nuance that we have to correct here.

8          But the idea is we've got -- like a recipe, we

9    have pieces that have to all be present and within that one

10   component, that one part of the recipe, there are a couple of

11   more components.  And so it's like a checklist.  You have to

12   have each one shown with proof beyond a reasonable doubt.

13         We'll talk about other things at the end of the

14   case, probably something about pecuniary value.  That's

15   probably pretty obvious to all of us, but we will talk about

16   that at the time.  I think everybody is probably not going to

17   have much dispute about what a cell phone is, an interstate

18   facility, and that sort of thing, but we'll talk about that a

19   little bit more.

20         Now, what about murder in Mississippi?  Is murder

21   in Mississippi different from murder in Tennessee?  I hope

22   not.  I certainly hope it's the same, essentially.

23         Under the Mississippi law, murder is defined as

24   unlawfully and with deliberate design killing a human being.

25   Now, they're not saying somebody was killed here, but they're

PRELIMINARY INSTRUCTIONS                                    22

1   saying there was murder for hire.  I'm trying to have

2   somebody killed.

3            Generally, in this instruction as to Mississippi

4   law, deliberate design means a person decides to unlawfully

5   kill another person, and there is no legal justification or

6   justifiable reason for doing so.  Now, that last sounds like

7   a big hole, but it's really -- we'll have to talk about that

8   more at the end of the case.  I mean, you don't get to kill

9   something because you don't like them.  That's not a legal

10  justification.  It has -- it would have to be usually

11  something akin to -- I'm not saying it would be -- something

12  like self-defense, and it wouldn't really fit here very well.

13  But it has to be some legally justifiable action.

14           So in this instruction in connection with

15  Mississippi law, deliberate design means a person decides to

16  unlawfully kill another person for no reason that's

17  defensible.  The decision to kill a person can be formed very

18  quickly, and we need to understand that.  It may occur only

19  moments before the actual act of killing.  Now, again, that's

20  the idea what would constitute murder for hire.  However,

21  deliberate design cannot be formed at the exact moment of the

22  actual killing.  So it's already designed.  It's a -- how do

23  you put it?  It's like a plan.  A deliberate decision to have

24  somebody killed, to kill someone.

25           At the end of the case, we'll give you more

1    detailed instructions on these concepts.  You'll have those

2    before you as you make your decision.  You'll also have to

3    think, obviously, about what's the mental state of the person

4    who is making these decisions, right? because if you're

5    intentionally doing something, it's a mental issue for the

6    jury to decide.

7              Well, I want going to explain something.  A

8    reminder to all of you of something you probably know

9    already.  Ordinarily, there is no way that a defendant's

10   state of mind can be proved directly because, in fact, at

11   this point in time in our history, no one can read another

12   person's mind and tell what that person is thinking.  Now, I

13   know someone might challenge me on that, but the fact is

14   we're not quite there yet.

15             So we start there.  We're not mind readers.  So

16   how is this going to be proven?  How would the Government

17   have to prove this?  Well, I suppose if they could have a

18   recording that says, I'm going to kill somebody, that might

19   be important.

20             But a defendant's state of mind can be proved

21   indirectly from the surrounding circumstances.  This includes

22   something like what the person said, what the person did, how

23   the person acted, and any other facts or circumstances in

24   evidence that show what was in the defendant's mind.

25             Of course, you may consider the natural and

1   probable results of any acts of the defendant you're

2   considering knowingly did or did not do and whether it is

3   reasonable to conclude that the defendant intended those

4   results.  And this, of course, is all for you to decide.  So

5   there are ways to prove this.  And you still have to ask

6   yourself at the end:  Has the Government met that burden with

7   proof beyond a reasonable doubt?

8            There is no requirement that the entire

9   conspiracy take place here in West Tennessee.  But for you to

10  return a verdict on the conspiracy charge, the way it's

11  charged here at this point in time, the Government must

12  convince you that either the agreement or one of the acts in

13  furtherance of the conspiracy took place in West Tennessee,

14  there has to be a connection to the Western District of

15  Tennessee.

16           We've gone over a number of things already, and

17  I'm going to recheck.  But I want to remind you again that

18  these are very preliminary instructions.  They are designed

19  to help you listen to the case.  There will be a clear set of

20  instructions at the end after we've conferred with counsel

21  and those instructions are the ones that you should follow in

22  determining your verdict in this case.

23           Now, there's seven things that I have to tell you

24  about, and you know them already.

25           The first thing is you cannot discuss the case

1   among yourselves.  And that makes sense.  There's no

2   preliminary deliberation.  You're not allowed.  Well, that's

3   a good thing because that means that you have to listen to

4   everything and have final arguments and final instruction

5   where you can talk among yourselves about the case.

6   Absolutely no discussions among yourselves.

7             Second thing, there's absolutely no discussion

8   with family and friends and somebody you see at home or

9   somebody you usually call when you get home.  Or, you know, a

10  relative that you see regularly.  Even your spouse, you

11  cannot talk with them about the case.  That's a prohibition.

12  It's really important.  So after you hear the first witness

13  today, you may be tempted to go talk about the case.  And the

14  answer is absolutely do not do it.  Absolutely do not do it.

15            What do you do if somehow you give into that

16  temptation, what do you do?  You come tell me about it.  I am

17  not going to get mad at you.  Of course, you might not be on

18  the jury any longer.  I've got to think about that.  That

19  will be a different thing.  But we understand people are

20  people, so what we want you to do is to be transparent, to

21  tell me.  And I'll be okay.  And you'll be okay.  But the

22  critical thing is that the process will be honored.

23            So when you go home and your significant other

24  says, tell me about the case, and you say, I can't tell you,

25  and they say, you must not love me anymore, then just tell

UNREDACTED TRANSCRIPT

1   them, I can't, I can't do it.

2           The third thing is that you cannot speak to the

3   witnesses, lawyers, or parties at all.  Now, I'm going to

4   tell you a little nuance there.  Obviously, you can't have

5   direct contact at all.  There's no speaking to them, there's

6   no contact with them, anything like that.  That also includes

7   that in the courtroom, the only way we receive testimony from

8   anybody is from the witness stand.

9           I am often reminded of a case long ago now, which

10  these prosecutors are too young to remember, in which they

11  brought in a codefendant who was a very large guy.  And the

12  opposite counsel said, Judge, we'd like to mark Mr. Wilson as

13  an exhibit in the case.  We can't do that.  But that's an

14  illustration that even what you see in the courtroom from

15  prosecution table and defense table is not evidence.  And I

16  have to tell you that because that's not fair to anybody to

17  make it that way.  So that's just not evidence.  The evidence

18  comes in from the witness stand.  So if somebody tries to

19  say, well, I was looking out in the courtroom, and I saw such

20  and such, if it's something that you can consider, counsel

21  will approach me, and they will say, Judge, this occurred,

22  the jury saw it, you need to instruct them that they can't

23  actually consider that.  But, otherwise, you can't consider

24  it.  You can't consider it.

25          Well, the next thing is that you can't -- there

UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                               27

1   should be -- is there still that placard in the back that

2   tells you what you can't do.  It supposed to be green.  It

3   used to be green.  Still there?  Good.  It needs to be

4   bigger, but I agree.

5           You cannot do any research or make any inquiry at

6   all.  I'm going over this kind of carefully.  This will be

7   the last time to do that.  You cannot do that at all.  So no

8   research or inquiry.  You now know enough to be curious

9   enough to be, if you're like me -- I'm not tempted to because

10  I don't need to, but it used to be everybody just go to

11  Google and look it up, right?  And you cannot do that, so

12  here's not inquiry at all.

13          There's a famous case in Virginia in which the

14  jury decided that they didn't understand one of the terms

15  that had been used in court.  And so they got a Webster's

16  dictionary, and they looked up the term in Webster's

17  dictionary.  The problem was, one, you're not allowed to do

18  it.

19          The second problem was that the definition in

20  Webster's dictionary was not the legal definition.  It was

21  wrong.  And so you look at a wrong definition, you're

22  applying the wrong definition, and you can't do that.  So

23  that's an emphasis, a way to think about it.  Can't do it at

24  all.  It's a relief to you, can't do it.

25          The sixth thing is avoid things from the media

1  about this case or cases like it.  I'm not telling you there

2  will be something.  I don't now.  There could be, though.  It

3  wouldn't be unusual.  But if you see something about this

4  case, you absolutely need to tell me, right?  And you're just

5  going to tell Mr. Sample or the court security officer, and

6  they're going to come say, our juror in Seat Number 8 needs

7  to come see, you, and he's going to tell you about it.  And

8  that's okay.  That's fine.

9          If you do see something, though, you must tell me

10  about it, but I'm going to suggest that you avoid things like

11  that.  And if there's a special *Law and Order* episode that

12  emphasizes -- none of you watch *Law or Order,* right?  But any

13  that emphasizes murder for hire, the answer is, please don't

14  watch it right now because it can affect your ability to be

15  fair and impartial.

16          Okay.  The last thing is I need you to keep an

17  open mind.  I need you to keep and open mind throughout these

18  proceedings until you've heard the final arguments of

19  counsel, the final instructions of the law, which are going

20  to vary a little bit from what you've heard because I'm going

21  to add some details, take out a few things here and there.

22  Those will control your deliberations.  And then you'll go to

23  the jury room, and the first thing you'll do is not vote.

24  That would be terrible, right?  Completely avoids the whole

25  process because you have to deliberate.

PRELIMINARY INSTRUCTIONS                                    29

1       How many watched *12 Angry Men?*  Oh, that's too

2   old for you guys.  Maybe not.  Okay.  Well, the point is that

3   there has to be a discussion.  And you all have to discuss it

4   together.  You have to listen to each other, and you learn

5   from each other's observations and then -- and I'm talking

6   only about the evidence and the law.  We're not talking about

7   something that happened to you personally.  And then and only

8   then do you attempt to reach your own mind as to what the

9   verdict should be as to each individual defendant.  And then

10  what the jury verdict should be.

11      Well, we've taken some time on this because this

12  is my last opportunity to tell you really much of anything in

13  this regard until we get to the final instructions.  We're

14  going to speak briefly to counsel at side-bar and see if they

15  want me to add something, and then we're going to take about

16  a 20-minute break, and there will be some things that have to

17  happen during that period of time.  And then we'll proceed

18  with opening statements.  So let me see counsel briefly at

19  side-bar.

20              (At side-bar on the record.)

21          THE COURT:  I wish I could make those really

22  short and I'll just give them a pill and move on, but I

23  can't.

24          Okay.  Mr. Ballin, what do we need to add?

25          MR. BALLIN:  Things that I do and say in court

UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                                30

1   are to properly represent my client, so what I'm about to say

2   is toward that goal.

3              THE COURT:  Okay.  Sure.

4              MR. BALLIN:  If I can voice an objection on

5   behalf of Defendant Ashley Grayson to the Court's

6   preliminary, instruction, specifically, when you talked about

7   the state of mind of the defendant, that we don't have

8   science to mind read.

9              THE COURT:  No, we don't.

10             MR. BALLIN:  That's not the problematic part of

11  it, but it's the preliminary part that we say is

12  objectionable and that I do object to.

13             You followed that up with an example of how to

14  prove a defendant's state of mind.

15             THE COURT:  Potential evidence.

16             MR. BALLIN:  The example you gave was a recorded

17  statement.  In this particular case, because of the pretrial

18  issues that we had, it's known to all, respectfully, the

19  Court included, that there was going to be a video played.

20  It's our position that Your Honor giving the example of how

21  to prove the state of mind of the defendant is an improper

22  comment on the evidence.

23             THE COURT:  Okay.

24             MR. BALLIN:  And I would respectfully ask that

25  this Court declare a mistrial.

UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                                31

1          THE COURT:  I can tell them to disregard it too.

2   I can do that.

3          MR. BALLIN:  It's already out, Your Honor.

4          THE COURT:  Well, believe me, if I tell them to

5   disregard it, I'm confident they will.

6          MR. SCHOLL:  I join in that objection, Your

7   Honor.

8          THE COURT:  Okay.  Comment?

9          MR. OLDHAM:  No, Your Honor.

10         THE COURT:  Okay.  What do we need to do?

11         MR. OLDHAM:  Your Honor, I believe that a

12   curative instruction from the Court addressing -- or a

13   curative pretrial instruction from the Court addressing

14   Mr. Ballin's concern could alleviate the concern of speaking

15   of the Court, that's a generic example and has no bearing on

16   this case.

17         Maybe give another example that doesn't then

18   bring in any of the facts in this case.  But I think this

19   early on and with this process and the jury knowing that

20   you're telling them something this early on, I think that

21   could be curative.

22         THE COURT:  Okay.  And what do you want me to

23   say?  I'm pretty good at getting that part right if you just

24   let me know.

25         MR. PHILLIPS:  Your Honor, since we were already

UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                                32

 1  going to take a 20-minute recess, could we have just a few

 2  moments to confer with our office and then we might have

 3  potentially something additional, Your Honor?

 4              THE COURT:  I mean, there's going to be a big

 5  issue about the tape, right?

 6              MR. BALLIN:  It is the biggest concern.

 7              THE COURT:  I wasn't trying to tell them what's

 8  going to be proven.  I'm trying to alert them so that they're

 9  not surprised.  It's one of those things -- so you want me to

10  tell them something more specific or less specific or just

11  not at all?

12              MR. BALLIN:  It's our position the harm has been

13  done, Your Honor.

14              THE COURT:  Well, let's talk about curing the

15  problem.

16              MR. BALLIN:  I hear Your Honor's question about

17  how to cure the problem, and I appreciate the Court

18  considering curing the problem.  Our main and primary

19  response is to grant the mistrial.

20              THE COURT:  Okay.

21              MR. BALLIN:  As to how the cure the problem, I

22  defer to the Court.

23              THE COURT:  Do you want to say something?

24              MR. PALMER:  I join everything that Mr. Ballin is

25  saying.  I don't know with that comment, you can unring that

UNREDACTED TRANSCRIPT

1   bell, that any curative instruction would be --

2            THE COURT:  Sometimes -- let me tell what you we

3   do.  Sometimes because it's a preliminary instruction, we

4   don't say anything because we don't want to draw undue

5   attention to something.  So that's a concern.  You're always

6   thinking about that.  Are you going to cause undue attention

7   to be drawn to it?  I can say, "Look, disregard that.  I

8   didn't need to say that.  That was inappropriate.  Just don't

9   think about it at all."  I think I think they would do that.

10  I'm not worried about that.  Jurors are pretty good at that.

11  But the main thing is it's a preliminary instruction.  It's

12  not binding in any way on you.  I could always do that.

13           MR. SCHOLL:  I'm concerned that, respectfully,

14  Judge, that the problem is with this case, is that the --

15  really, I don't think anybody would disagree with me the

16  biggest piece of evidence in this case is that video.  And

17  the biggest part of the defense is lack of intent.  And now

18  the jury has been given information that they can infer

19  intent from a recording.

20           THE COURT:  Okay.

21           MR. SCHOLL:  So that would be the concern, at

22  least with regards to as I would voice it.

23           THE COURT:  Okay.  What do you think about that?

24  Anything else?

25           MR. BALLIN:  I honor Mr. Phillips asking for a

 1   moment for them to confer and possibly for us to confer.

 2           MR. OLDHAM:  Would that be allowed, Your Honor,

 3   that during this break you were going to take anyways for us

 4   to be able to confer to see if there's any other remedy that

 5   we can --

 6           THE COURT:  Well, preliminary instructions are

 7   not for the purpose of instructing the jury.  They're solely

 8   for the purpose of giving the jury some guidance.  And I

 9   don't think it's inappropriate to alert the jury that they

10   may want to be sensitive about things that might come up, so

11   that's not the problem.

12           The problem is the suggestion that I'm saying

13   that would prove intent, which it would not.  It's not

14   necessarily going to prove that at all.  And I understand --

15   right?  And I understand that.  Unless you think it is going

16   to prove it, then I would be very interested in --

17           MR. PALMER:  That's, I think, our concern.

18           THE COURT:  You would agree that the jury could

19   reject that and decide there's no intent?

20           MR. BALLIN:  That's our concern that Your Honor

21   has given an example of how to prove the defendant's intent.

22           THE COURT:  Well, I understand what you're

23   saying.  Okay.  I understand that.  And the question is then:

24   What do you do -- one, again, it's preliminary, how do you

25   best address that?  Of course, it is correct that you could

UNREDACTED TRANSCRIPT

1  prove it through use of a recording, right?  I mean, that

2  would be wrong not to say --

3          MR. BALLIN:  It would be Your Honor commenting on

4  the evidence.

5          THE COURT:  No, no, no, I'm not saying that.  I'm

6  mean, I'm just saying a matter of fact and law, that would be

7  a way to do it.  I'm not saying I'm going to use it.  I'm

8  just asking.  I think there is a way you can do it.

9          I know he needs to turn that tie around.  We've

10 been watching the whole time.

11         So let's just figure out what we need to say.

12         MR. OLDHAM:  Your Honor, I think since you've

13 used that as an example, maybe you could give a couple of

14 other examples.  I just think it important they hear some

15 other examples this could be proved.  This isn't the only

16 way.

17         THE COURT:  What other example do you want to

18 suggest?

19         MR. PHILLIPS:  I think that's the 20-minute

20 recess.

21         MR. PALMER:  We've discussed at length between

22 counsel that without the video, this case would most likely

23 not be prosecuted.

24         MR. OLDHAM:  That's the whole crime, Your Honor.

25 We would argue that there's some other things, but the

UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                              36

1   evidence upon which we are relying the most is that one video

2   that's split into two segments.

3            THE COURT:  What I've always understood is that

4   you were going to attack the veracity of that video, and you

5   were going to have an expert who is going to testify about

6   that.

7            MR. PALMER:  Sure.

8            THE COURT:  And, therefore, that's not a

9   concluded item.

10           MR. LEVINE:  That's not really accurate, Your

11  Honor.  Respectfully, that's a very small part of our

12  defense.  The larger part, the greater weight of our defense

13  is going to her lack of intent.

14           THE COURT:  Sure.

15           MR. SCHOLL:  And the problem is I don't think --

16           THE COURT:  I mean, I'm not disagreeing with you.

17  I think that's more my perspective, which it's just a piece.

18  It's not a conclusion.

19           MR. SCHOLL:  I think that the thing that gets

20  attacked on the video is whether it's been spliced or

21  partially missing some of it.  The part that you actually see

22  on the video, I don't think that's being to be any argument

23  that it's been edited at least that part.  The video is not

24  of my client, but I don't think there's going to be -- there

25  will be an argument from us that this was ever edited as far

PRELIMINARY INSTRUCTIONS                                37

 1   as what was being said on the video.  Now, maybe that is a

 2   portion of what the whole conversation was, but what is being

 3   said on the video, I don't believe is -- my understanding is

 4   there's not going to be any dispute that it's going to be --

 5                THE COURT:  Problematic.

 6                MR. SCHOOL:  -- what she said.

 7                THE COURT:  I understand what you're saying.  Let

 8   me see if we can handle it this way.

 9                (End of discussion at side-bar.)

10                THE COURT:  I need to clarify something that we

11   went over earlier, and that is we were talking about intent.

12   I probably gave an example that's not really appropriate to

13   have given in this case, so I want you to rethink that.

14                I'm going to tell you about some uses of video in

15   previous cases, not in this case.  Not in this case at all.

16   We just tried a case not long ago in which there were

17   multiple both video recordings and silent recordings.  Some

18   didn't have audio.  Some did.  It was a multiple -- it had

19   multiple charges in the case, a lot of things going on.  And

20   sometimes you couldn't tell exactly what was going on.

21                But in that case, there was one little piece of

22   evidence that showed up in several videos, and that was a

23   particular black Impala.  And part of the thing was where was

24   the defendant?  Was the defendant there or not there?  Well,

25   I'm not sure.  I don't know.  But part of the circumstantial

UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                          38

1   evidence was that a black Impala owned or having -- the

2   defendant having access to because it's actually owned by

3   someone else but having access to was in these locations,

4   actually, in the locations on some occasions in front of the

5   facility or store that was robbed.

6              Well, did that say that the defendant was there?

7   No.  That was -- not really.  We didn't see the defendant.

8   We saw a black Impala that he had access to and that he could

9   drive.  Well, that was a piece of the case.  The question was

10  did he -- was he there and did he have the intent to commit

11  these particular offenses, but it was mainly was he present?

12             So circumstantial evidence does not necessarily

13  tell you what actually happens, right?  But it tells you that

14  it is a fact from which you may draw another conclusion.  You

15  may draw the conclusion that this was a totally different

16  person totally unrelated to this case, that he was there.

17  You may draw the conclusion that there are lots of black

18  Impalas in Memphis, Tennessee that look like this car.

19  There's just not enough proof to show that he was there.

20  It's far from conclusive on that question.  So that can be

21  circumstantial evidence that suggests that you might draw

22  that inference, but you sure want to look at lot of other

23  material.

24             Now, any reference that I made earlier to any

25  video or tape or recording, I'm going to ask you to disregard

PRELIMINARY INSTRUCTIONS                                    39

1   that.  Just don't think about it.  That is not before you at

2   this time, and we're going to wait and see and I don't know

3   what will happen in this case.  And I'm not even saying that

4   is a basis or sufficient basis to draw any conclusion about

5   anything.  I just don't know.  I just don't know.  And thank

6   goodness, I don't have to make those decisions.

7           So if somebody says, well, the judge said

8   something about in the preliminary instructions, you say,

9   wait a minute, wait a minute, those were preliminary.  They

10  were just talking points.  They weren't things that are going

11  to relate to this case.  It's just a very matter -- and I'm

12  not -- we're disregarding that altogether.  I'm going back to

13  the black Impala.  We're just going back to the idea that

14  there can be things that suggest that an inference can

15  withdrawn.  But I don't know, and you don't know.

16          What we do know is, what?  That you're going to

17  get to see the evidence that's properly admissible in the

18  case, and you can draw those inferences, and that's an

19  important point, that are logical and appropriate in the case

20  because we understand that a jury can draw inferences, but

21  you're not required to.  So we're going to wait and see on

22  that.  So I'm going to ask you, erase mode.  We're going to

23  be back to that one.  We're going to take that one out

24  because that's not something we're going to talk about here.

25  And if somebody brings it up and says I said, you're not

UNREDACTED TRANSCRIPT

1  going to hear me saying that in the final instructions.  I'll

2  tell you that right how.  It's not going to be there.  It's

3  not going to be there because we're leaving every issue,

4  every issue regarding the facts in the case entirely up to

5  you.  I never want to suggest anything about those things.

6  That's just not my business.  That's not my job, and I should

7  not do that.

8            Now, we said that we would take about a 20-minute

9  break, and we will check with counsel.  At least 20 minutes.

10  I need to make sure that everything is arranged that we need

11  to have arranged earlier.  It is.  Good.  Absolutely.

12            So we're going to let you be excused to the jury

13  room, and this is a 20-minute break, but you may also need to

14  visit with someone who needs to go over some information with

15  you there, and please give that person your undivided

16  attention.  Thank you all very much.

17                  (Jury out at 2:22 p.m.)

18            THE COURT:  Let me see counsel briefly at

19  side-bar and then we can have a break and come back for

20  opening statements.

21                  (At side-bar on the record.)

22            THE COURT:  All I can do is hit the erase button,

23  and I know you don't agree.  Now I've got poor Mr. Moore in

24  this other case.  They did have a black Impala.  I promise.

25  They didn't show Mr. Moore.  They just showed that black

                    UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                                    41

1   Impala.

2              MR. BALLIN:  All right.  So a couple of weeks

3   ago.

4              THE COURT:  You know about Mr. Moore's case.  No,

5   you don't.

6              MR. BALLIN:  A couple of weeks ago, a landscape

7   company that does my yard put these fancy plants in my yard,

8   and I'm thinking I wonder how much this is going to cost me.

9   And the reason I'm asking is they look like the way they

10  are -- they're long and skinny, and I'm thinking the first

11  breeze that comes along, it's going to break, and it can't be

12  fixed.  So lo and behold, what my fear was, the wind came and

13  this plant that cost me God knows how much money can't be

14  fixed even though --

15             THE COURT:  It's got a guarantee.  They'll come

16  replant it.

17             MR. BALLIN:  Even though I tried to upright it

18  and put it together, it just -- they took it out.  Hadn't

19  replaced it.  So I say that, and certainly I heard Your Honor

20  tell them, in your words, hit the erase button.  I must renew

21  my motion for a mistrial.

22             THE COURT:  That's fine.

23             MR. SCHOLL:  I join in on behalf of Mr. Grayson

24  also.

25             THE COURT:  Absolutely.  You're going to feel

1   really funny when you get a not guilty in this case, but I'm

2   okay with that.  I'm sort of kidding.  I'm just saying, but

3   then the Government is going to say, oh, we should have

4   granted that motion.  No, I understand what you're saying.

5   It's all I can do under the circumstances.  I wasn't

6   intending -- you know, we have lots of illustrations and lots

7   of things that happen here but that was a little too close so

8   we need to get away from it and give them some other thing

9   that lets them understand that something might be

10  circumstantial, but it's not conclusive.  It doesn't tell us.

11  Now, I know I think that you've been telling me, and I don't

12  disagree the tape may not be great evidence.

13          MR. PALMER:  No, that's why we spent so much time

14  on the motion to exclude.

15          THE COURT:  I know, and I understand that.

16          MR. PALMER:  If you want to revisit that.

17          THE COURT:  No, no.  That's been well done.

18  Everybody did a good job on that.

19          MR. SCHOLL:  The concern is although it was a

20  good circumstantial example, this --

21          THE COURT:  I could have done the rain thing.  I

22  thought about doing that one, the umbrella thing.  Talking

23  about the raincoat.  I could have done that.

24          MR. SCHOLL:  The video is sort of direct evidence

25  of intent.  It could be in this situation.

UNREDACTED TRANSCRIPT

1          THE COURT:  Well, I hear what you're saying.  It
2   could be.
3          MR. PALMER:  That's what they're banking on.
4          MR. OLDHAM:  Your Honor, frankly, just come on
5   say it, I think their defense is going to be even if it
6   sounds like that's what she's saying, that's not really what
7   she's saying.
8          MR. PALMER:  Exactly.
9          THE COURT:  That's what I've understood what they
10  were going to say all along.  Am I wrong about that?
11         MR. BALLIN:  No, sir.
12         MR. SCHOLL:  My guy didn't know anything about
13  it.  I'm still back here.  But I'm still in the middle of
14  trial too.  I'm in both places, Judge.
15         THE COURT:  No, I understand.  Sometimes you just
16  have a lot of things that happen.  There's circumstantial
17  evidence in our cases, and sometimes we have to play the
18  cards we've got, and I think the jury understands they're
19  preliminary.  They understand they're going to make all the
20  fact determinations, and I'm not suggesting any fact that
21  should be concluded, and that's all I can do.  That's the
22  truth.  You know how much I don't care in that -- I don't
23  mean this in a bad way.  I care about the case, but I
24  truly -- I leave it up to the jury.  I'm happy to do that in
25  every case, and I know that experienced Texas counsel, a lot

PRELIMINARY INSTRUCTIONS                                44

1   of times you're just really glad that's a jury.

2                MR. BALLIN:  And I'm thinking about the

3   potential -- and on the tree thing --

4                THE COURT:  I've got a good nursery.

5                MR. BALLIN:  I'm just thinking about the

6   potential sentence upon a conviction.  It's a pretty stiff

7   guideline-wise.  It's a ten-year statutory maximum and I

8   think the -- it just --

9                THE COURT:  This is a tough case.

10               MR. BALLIN:  It's a tough case, and we all make

11  mistakes.  I make mistakes every day.

12               THE COURT:  I think I told them I did.  That's

13  all I can do.

14               MR. BALLIN:  But because of the potential

15  ramifications to our client, isn't the best, wisest thing to

16  do is to grant a mistrial so we don't have this --

17               THE COURT:  It's an interesting question, and we

18  always think about that.  I don't disagree that I've -- you

19  know, anything you indicate I'm going to give very serious

20  thought to.  I think the answer is kind of what I've said a

21  little bit already.

22               First of all, it's a preliminary instruction.

23  You tell them that's not going to govern what they do.

24  Absolutely.  Then you come back and tell them, don't think

25  about that, and they know they weren't supposed to and let's

UNREDACTED TRANSCRIPT

 1  just talk about what would constitute evidence that would

 2  be -- what happens in other cases.  It's not direct evidence.

 3  This does sound like more direct evidence in the case, but I

 4  can't -- I just -- you know, I worry about always -- I worry

 5  about always expecting a level of perfection that I'm

 6  probably incapable of achieving, and I understand that.  So I

 7  always look to you guys to help us get to the best place.

 8              I don't think a mistrial is the best thing in

 9  this case.  I think that we have done what we needed to do,

10  and we're at a stage where we've done all we can do.  And

11  also I look out there and I think, you know something,

12  there's a lot that's been invested by all the parties in this

13  case to get to this point, including your clients.  And I

14  worry about things like they've got a good jury.  They've got

15  a very thoughtful jury.  This jury is going to listen very

16  carefully to everything that you say.  I'm not sure who is

17  going to be saying it.

18              And I'm very comforted by that fact.  And I know

19  that at the end of the case, we will give the instructions

20  that they will follow.  So I think we can -- if you will help

21  us, and I really invite you to do this, to make sure that in

22  the final instructions if there's anything else that we need

23  to say, I'll say it, I'll get it said.  I think that for

24  example as to Mr. Grayson, it would be really terrible to not

25  let him go ahead and get this over with.

1          MR. SCHOLL:  Mr. Grayson, he doesn't know a lot

2     about the law or anything else, but he was paying attention

3     to Your Honor's instructions, and that sort of peaked up at

4     the same time Mr. Ballin peaked up and he grabbed my jacket.

5     And then after Your Honor finished going, he goes, man, I

6     don't want this jury.  They just heard that that video was

7     going to be her intent to do this.  And then when I went

8     back, he goes, Mike, I don't want this jury, they can't

9     unhear what was just heard.  That was his response to me.

10         Just putting that on the record because it became

11    an immediate concern for him, and he's not a lawyer.  He

12    doesn't really even know anything about the instructions.

13    And so -- in fact, he lost his place when we were doing jury

14    voir dire.  But it came up that much for him enough to grab

15    me and him make the independent comments to me about that.

16         THE COURT:  Sure, sure.  And that's why we say

17    what we've said, and I think that that's all we can do at

18    this time.  And if we get it wrong, we're very thankful we've

19    got a Sixth Circuit Court of Appeals.  I'm not going to be

20    offended.  The idea, though, is we're all working hard to get

21    a fair result in the case that's not influenced by anything

22    inappropriately.  And we're going to work hard on that, so

23    just continue to give it some thought, and we'll get it

24    worked out.

25         MR. LEVINE:  May I add one thing?

UNREDACTED TRANSCRIPT

PRELIMINARY INSTRUCTIONS                                        47

 1           THE COURT:  Sure.  And we're getting a little --
 2   I'm getting beaten up by four lawyers instead of two.
 3           MR. LEVINE:  I know.  Yes, Your Honor.  You then
 4   told them that you're not sure that there's going to be a
 5   video in this case when the Court knows there's a video in
 6   this case.
 7           THE COURT:  Well, it hasn't been admitted yet.
 8   It hasn't been received.  And I can't say things like it's
 9   going to come in because I can't say that.
10           MR. LEVINE:  I understand, Your Honor, but you
11   also said you don't know and you mentioned video again, so
12   now when they hear it, it's going to be there is a video.
13           MR. PALMER:  Are you going to play it in your
14   opening?
15           MR. OLDHAM:  No.
16           THE COURT:  He's not.  Okay.  I always tell
17   everybody I can't do anything about the good facts or the bad
18   facts in anybody's case.  I don't have anything to do with
19   that.  That's up to the lawyers to deal with.  My job is to
20   make sure the jury makes the decision based solely on the
21   evidence and the law.  And if I make a mistake, we will tell
22   the jury that we need to not consider that and I have been
23   confident for a long time and still confident that the jury
24   will take ma instruction.  Juries are good at that.  They
25   know they can't do it.  And we have to have faith in the

UNREDACTED TRANSCRIPT

1    system.  I think it will work just fine.

2              But we need to let everybody get a little bit of

3    a break.  I know you've got to get ready for -- Government

4    has got to be ready.  We have how many minutes before we

5    start back up, eight?

6              CASE MANAGER:  Seven now.

7              MR. BALLIN:  Can we have ten?  We're going to

8    take eight minutes.

9                 (End of discussion at side-bar.)

10        (A recess was taken from 2:33 p.m. to 2:43 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT

1                       **C E R T I F I C A T E**

2

3

4            I, TINA DuBOSE GIBSON, do hereby certify that the

5    foregoing 48 pages are, to the best of my knowledge, skill

6    and abilities, a true and accurate transcript from my

7    stenotype notes of the preliminary instructions held on the

8    28th day of March, 2024, in the matter of:

9

10   UNITED STATES OF AMERICA

11   vs.

12   ASHLEY GRAYSON AND

13   JOSHUA GRAYSON

14

15

16   Dated this 28th day of March, 2024.

17

18

19

20                         S/Tina DuBose Gibson
                           _____
21                         TINA DuBOSE GIBSON, RPR, RCR
                           Official Court Reporter
22                         United States District Court
                           Western District of Tennessee
23

24

25


                    UNREDACTED TRANSCRIPT