IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  | |
|     Plaintiff  )  | |
| )  | No. 2:23-cr-20121-JPM |
| v.  )  | |
| )  | |
| ASHLEY GRAYSON,  )  | |
|     Defendant.  )  | |

**GOVERNMENT'S RESPONSE TO DEFENDANT ASHLEY GRAYSON'S MOTION
FOR JUDICIAL RECUSAL AND RENEWED MOTION FOR MISTRIAL**

COMES NOW, the United States of America, by and through the undersigned, and hereby files its response to defendant Ashley Grayson's motion for a judgment of acquittal and new trial. (RE-152). For the reasons set forth in the accompanying memorandum of facts and law, the defendant's claims are without merit and their motions should be denied.

                                                Respectfully submitted,

                                                KEVIN G. RITZ
                                                United States Attorney
                                                Western District of Tennessee


                                              By: s/P. Neal Oldham
                                                P. NEAL OLDHAM
                                                Assistant United States Attorney
                                                167 N. Main Street, Suite 800
                                                Memphis, TN 38103
                                                (023811 – Tennessee)

## CERTIFICATE OF SERVICE

I, P. Neal Oldham, Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing Motion has been forwarded to Defendant's attorneys via the court's electronic delivery system.

s/P. Neal Oldham
P. Neal Oldham
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | |
|      Plaintiff                 ) | |
|                                  ) | No. 2:23-cr-20121-JPM |
| v.                               ) | |
|                                  ) | |
| ASHLEY GRAYSON,                  ) | |
|      Defendant.                ) | |

**MEMORANDUM IN SUPPORT OF GOVERNMENT'S RESPONSE TO DEFENDANT ASHLEY GRAYSON'S MOTION FOR JUDICIAL RECUSAL AND RENEWED MOTION FOR MISTRIAL**

COMES NOW, the United States of America, by and through the undersigned, and hereby files its memorandum in support of its response to defendant Ashley Grayson's motion for judicial recusal and renewed motion for mistrial. (RE-152). For the following reasons, the defendant's claims are without merit, and her motions should be denied.

**Analysis**

**28 U.S.C. §455(b)**

**(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
**(b)** He shall also disqualify himself in the following circumstances:
   **(1)** Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

Judges should recuse themselves under **§** 455(a) "in any proceedings in which [their] impartiality might reasonably be questioned," and under **§** 455(b)(1) where they have "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." The moving party must present "compelling evidence" of bias so that a reasonable person would be convinced the judge is biased. See *United States v. Liggins*, 2023 WL 4946323 (6th Cir. Aug. 3,

2023) (judge should have granted recusal motion after making disparaging remarks about defendant and the case); United States v. *Modjewski*, 783 F .3d (7th Cir. 2015) (judge's cross-examination of defense expert).

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See *United States v. Grinnell Corp.,* 384 U.S., at 583, 86 S.Ct., at 1710. In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.
> 
> *Liteky v. U.S.*, 510 U.S. 540 (555)

Defendant argues that because Judge McCalla allegedly said that Ms. Grayson's "business is a scam" and expressed a desire that she "disappear" that he has displayed a personal bias and prejudice against her and should recuse himself from the case. Nothing allegedly said by Judge McCalla in chambers reveals any favoritism or antagonism, if said, they were merely comments on the state of the evidence after Ms. Grayson was convicted of soliciting the murder of her professional rival.

## The Statements

Whether the comments about Ms. Grayson's business were made or not, they do not give rise to any claims of bias and prejudice such that recusal is warranted. The comments were made after Your Honor presided over a trial in which the jury found Ms. Grayson guilty of soliciting

the murder of a business competitor/influencer who she did not get along with professionally and then had to determine appropriate terms of bond to ensure the safety of the community.

The United States does not know if these comments were taken out of context because it is not aware of the context from which these comments were taken. Much past the fact that a probation officer went to Judge McCalla's office to clarify the modified terms of Grayson's release post-conviction, we do not have any other information. Grayson in her motion states that one probation officer e-mailed another probation officer her recollection of the interaction with Judge McCalla.

The portion of the e-mail upon which defense relies actually says "McCalla said verbatim "Her business is a scam, but they (meaning the government) did not ask us to determine that. As a result, he wanted her to disappear." First and most obviously, this is not a verbatim retelling of Judge McCalla's statement. One doubts seriously that the Judge put a parenthetical (meaning the government) in the middle of a statement.

This is not a verbatim quote. This is an e-mailed recollection. Which leads one to desire much more context. Did Judge McCalla invite the office to his chambers or did the officer request the meeting. Who was present during this interaction. Most importantly, and excuse the United States for its strict attention to detail, what was actually said during the interaction? Who spoke first? What else was discussed? What were the statements before and after the alleged offending statements? Usually when the moving party makes a request of this magnitude, they have a written record upon which to rely. Instead, they have relied upon an at best an incomplete message and possibly a completely inaccurate rendition of events to suggest there is some basis for recusal.

**Bias or Prejudice**

Taking the statements in a vacuum, because there is no other choice in this case, the question now becomes whether or not the comments display a bias or prejudice on the part of Judge McCalla.  The United States submits that they do not.

Grayson argues that the Court heard no evidence of Ms. Grayson's business during the trial.  The United States submits that this is not exactly the state of the record.  During the direct examination of Olivia Johnson and when asked why Grayson did not like Sherrell Hodge Johnson responded, "Her TikTok.  Here TikTok page.  Like, she made a video about Ashley being a scammer, so that's what we were talking about."  RE-144, Trial transcript, PageID 1229-1230.

Derricka Harwell also testified that she and Grayson were in the same field of business.  The Court heard plenty of evidence regarding the personal and professional rivalry between Grayson and Harwell.  During Harwell's direct examination she read an e-mail from Grayson, exhibit 27 that said in part "I know this industry is full of drama.  That's why I stay to myself.  It's so messy, but I've heard nothing but amazing things about you and what you've done for the community."  Id. PageID 1671-1672.  Grayson wrote in another exhibit 32 "You even steal my posts, receipts.  Imagine paying 997 for a course then calling your cheap ass webinars course.  All of a sudden when you called them webinars before you were up my ass."  Id.  PageID 1684.

Did Judge McCalla get a business prospectus? No. But to suggest that there was no evidence of Ms. Grayson's business at all is inaccurate.  Judge McCalla did hear one more fact that came out in evidence during the trial.  Grayson was willing to pay to have a personal and professional rival killed.  The record is replete with the awful personal and professional things that Grayson and Harwell said about each other online.  It was clear that Grayson's animus and desire to have Harwell killed came at least in part from the professional rivalry.

Could a detached Judge hearing evidence of a scammer in a drama filled and messy business who conspires to have a rival business owner killed form the opinion that "her business is a scam"? Absolutely. Does that make the Judge biased or prejudiced against the person convicted of conspiring to have her business rival killed? No.

> "The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *In re J.P. Linahan, Inc.,* 138 F.2d 650, 654 (CA2 1943). Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." *Liteky v. U.S.,* 510 U.S. 540 (551-552).

Judge McCalla sat through an entire trial where he could have fairly formed an opinion, a judgment, or both. His comment did not display bias or prejudice. It was an opinion formed after a trial where the jury found, based on the evidence, Grayson conspired to kill someone, who among other things was a rival in their shared dramatic, messy industry. Judge McCalla's comment is not a personal attack. It does not show prejudice because his knowledge and opinion about Grayson's business were acquired in the course of the trial.

In the evidentiary double hearsay email, Judge McCalla also allegedly said "as a result that he wanted her to disappear." Defendant has asserted that this in chambers comment is the result of bias or prejudice such as to shock the conscience and file her motion. However, Judge McCalla clearly stated on the record that Ms. Grayson would have "absolutely no social media participation, responses, there's no e-mailing, there's no going on TikTok, there's no responding to anyone because you feel like that you should, because you cannot. You will be invisible. That

will *disappear*. That is a part of your life that is over, and that cannot be changed in this case." (emphasis added) RE-146, Trial transcript, PageID 1629. It seems quite clear that Judge McCalla was simply re-iterating his previously stated on the record objective in allowing Ms. Grayson to remain out of custody, he intended to keep a tight rein on her criminal activity to ensure that no one else was subject to her murder plots.

### Renewed Motion for Mistrial and Attempt to Connect Post Conviction Statements to Pretrial Jury Instructions

Next, Grayson argues that Judge McCalla's comment during his pretrial instructions to the jury foreshadowed his bias and prejudice towards Ms. Grayson and therefore the motion for a mistrial and recusal should be granted. There is no connection between Judge McCalla's pretrial example and refusal to declare a mistrial at that point and an opinion he formed about Grayson's business after the trial and when determining Ms. Grayson's bond conditions.

The defense fails to connect these two disparate actions because the case upon which they relied, *Liggins*, 76 F.4th 500 (6th Circuit at 506), involved a statement that a judge made in open court and in front of the defendant nearly two years before that defendant went to trial. In *Liggins*, the judge said that the defendant "looks at a criminal to me." Judge McCalla's comment is markedly different from the judge in *Liggins*. First, it occurred after the trial; (second) after defendant had been found guilty by a jury of her peers; (third) after the Court heard evidence about the business owner's desire to kill; (fourth) the comment was about the business owner's business and not the business owner; and (fifth) was made after Judge McCalla determined by clear and convincing evidence that Ms. Grayson was not likely to flee or pose a danger to the community pursuant to 18 United States Code Section 3143(a) and modified the conditions of release pursuant to 18 United States Code Section 3142(c).

Judge McCalla's comment on the defendant's state of mind has nothing to do with a judicial bias.  It has nothing the do with a comment Judge McCalla made in chambers.  The two are not connected.  Defendant once again addresses Judge McCalla's comment on mental state without the proper context.

This was one comment amidst one pretrial jury instruction amidst approximately thirty minutes and thirty-seven pages (PageID-1096-1133) of written record pages of pretrial jury instruction.  More than that defense attorney does not address the lengths Judge McCalla went to remedy any potential error.

```
            THE COURT: I need to clarify something that we
went over earlier, and that is we were talking about intent.
I probably gave an example that's not really appropriate to
have given in this case, so I want you to rethink that.
I'm going to tell you about some uses of video in
previous cases, not in this case. Not in this case at all.
We just tried a case not long ago in which there were
multiple both video recordings and silent recordings. Some
didn't have audio. Some did. It was a multiple -- it had
multiple charges in the case, a lot of things going on. And
sometimes you couldn't tell exactly what was going on.
But in that case, there was one little piece of evidence that
showed up in several videos, and that was a

particular black Impala. And part of the thing was where was
the defendant? Was the defendant there or not there? Well,
I'm not sure. I don't know. But part of the circumstantial
evidence was that a black Impala owned or having -- the
defendant having access to because it's actually owned by
someone else but having access to was in these locations,
actually, in the locations on some occasions in front of the
facility or store that was robbed.
Well, did that say that the defendant was there?
No. That was -- not really. We didn't see the defendant.
We saw a black Impala that he had access to and that he could
drive. Well, that was a piece of the case. The question was
did he -- was he there and did he have the intent to commit
these particular offenses, but it was mainly was he present?
So circumstantial evidence does not necessarily
tell you what actually happens, right? But it tells you that
it is a fact from which you may draw another conclusion. You
```

may draw the conclusion that this was a totally different
person totally unrelated to this case, that he was there.
You may draw the conclusion that there are lots of black
Impalas in Memphis, Tennessee that look like this car.
There's just not enough proof to show that he was there.
It's far from conclusive on that question. So that can be
circumstantial evidence that suggests that you might draw

Now, any reference that I made earlier to any
video or tape or recording, I'm going to ask you to disregard
that. Just don't think about it. That is not before you at
this time, and we're going to wait and see and I don't know
what will happen in this case. And I'm not even saying that
is a basis or sufficient basis to draw any conclusion about
anything. I just don't know. I just don't know. And thank
goodness, I don't have to make those decisions.
So if somebody says, well, the judge said
something about in the preliminary instructions, you say,
wait a minute, wait a minute, those were preliminary. They
were just talking points. They weren't things that are going
to relate to this case. It's just a very matter -- and I'm
not -- we're disregarding that altogether. I'm going back to
the black Impala. We're just going back to the idea that
there can be things that suggest that an inference can
withdrawn. But I don't know, and you don't know.
What we do know is, what? That you're going to
get to see the evidence that's properly admissible in the
case, and you can draw those inferences, and that's an
important point, that are logical and appropriate in the case
because we understand that a jury can draw inferences, but
you're not required to. So we're going to wait and see on that. So
I'm going to ask you, erase mode. We're going to
be back to that one. We're going to take that one out
because that's not something we're going to talk about here.
And if somebody brings it up and says I said, you're not
going to hear me saying that in the final instructions. I'll
tell you that right how. It's not going to be there. It's
not going to be there because we're leaving every issue,
every issue regarding the facts in the case entirely up to
you. I never want to suggest anything about those things.
That's just not my business. That's not my job, and I should
not do that.  RE-144, Trial Transcript.  PageID 1130-1132

      Far from tainting a jury or showing any bias or prejudice completely made up to try to

win a motion for recusal or mistrial, Judge McCalla went out of his way to instruct the jury to

disregard his comment and to only consider the evidence in the case. This is an example of Judge McCalla's true disposition in this trial, that of a neutral and detached judicial officer who treated defendant, witness, prosecutor, and defense attorney similarly.

When arguing there was bias or prejudice, defense neglects to consider one key point. Ms. Grayson was out on bond prior to the trial. Once convicted, the United States strenuously petitioned the Court to take Grayson into custody. In an hour-long discussion, the United States argued for detention pending sentencing while defense counsel, Ms. Grayson's attorneys, previously acquitted husband, and the pretrial officer present all argued to keep Grayson out on bond. During that postconviction hearing, Judge McCalla allowed all persons to interject: attorney, probation officer, and otherwise (husband). Judge McCalla considered Ms. Grayson's situation and circumstances and rejected the United States request that Ms. Grayson's bond be revoked, and she be detained pursuant to the presumption in 18 United States Code section 3143(a) and instead and allowed Grayson to stay out on bond, with modified conditions pursuant to 18 United States Code section 3142(c). These are not the actions of a Judge who has bias or prejudice against a defendant.

That leads us to the disappear portion of the double hearsay e-mail. The United States submits that the context of any referral to "disappear" comes from Judge McCalla's comments when he set Grayson's conditions of postconviction release. One of Grayson's conditions was that she not engage in social media. Judge McCalla clearly stated on the record that Ms. Grayson would have "absolutely no social media participation, responses, there's no e-mailing, there's no going on TikTok, there's no responding to anyone because you feel like that you should, because you cannot. You will be invisible. That will disappear. That is a part of your life that is over, and that cannot be changed in this case." RE-146, Trial transcript, PageID 1629. It

seems quite clear that Judge McCalla was simply re-iterating his previously stated objective in allowing Ms. Grayson to remain out of custody, he intended to keep a tight rein on her criminal activity to ensure the safety of the public.

Though it isn't clear when probation went to Judge McCalla, it appears to the government that Judge McCalla simply wanted Grayson's public-facing social media and internet persona to disappear because social media and the internet in large part contributed to Grayson's motivation to conspire to kill someone.

Far from showing bias or prejudice, Judge McCalla formed an opinion from a trial and guilty verdict. Judge McCalla stated that opinion (we think that is what happened) to a probation officer. There was no bias or prejudice when the Court commented on a way a defendant's mental state could be proved pretrial and made efforts to remedy that instruction after defense counsel objected. There was no bias or prejudice when Judge McCalla opined about Grayson's business postconviction. The two are not related. They never were. Neither together or separate show bias or prejudice because there was none.

## CONCLUSION

Based on the foregoing, this Court should deny defendant's motion for a judgment of acquittal and for a new trial.

Respectfully submitted,

KEVIN G. RITZ
United States Attorney
Western District of Tennessee

By: s/P. Neal Oldham
P. NEAL OLDHAM
Assistant United States Attorney
167 N. Main Street, Suite 800
Memphis, TN 38103
(023811 – Tennessee)

## CERTIFICATE OF SERVICE

I, P. Neal Oldham, Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing Motion has been forwarded to defendant's attorneys via the court's electronic delivery system.

s/P. Neal Oldham<br>
P. Neal Oldham<br>
Assistant United States Attorney