# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff ) | |
| ) | No. 2:23-cr-20121-TLP |
| v. ) | |
| ) | |
| ASHLEY GRAYSON, ) | |
|     Defendant. ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT ASHLEY GRAYSON'S MOTION FOR RECONSIDERATION OF DENIAL OF MOTION FOR MISTRIAL

The United States of America opposes defendant Ashley Grayson's Amended Sealed Motion for Reconsideration of Denial of Motion for Mistrial. (RE-190). For the reasons set forth in the accompanying memorandum of facts and law, the defendant's claims continue to be without merit, and this Court should deny Defendant's pending motion.

Respectfully submitted,

REAGAN TAYLOR FONDREN
Acting United States Attorney
Western District of Tennessee


By: s/P. Neal Oldham
P. NEAL OLDHAM
Assistant United States Attorney
167 N. Main Street, Suite 800
Memphis, TN 38103
(023811 – Tennessee)

## **CERTIFICATE OF SERVICE**

I, P. Neal Oldham, Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing Response has been forwarded to Defendant's attorneys via the court's electronic delivery system.

s/P. Neal Oldham
P. Neal Oldham
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| **Plaintiff** ) | |
| ) | No. 2:23-cr-20121-TLP |
| **v.** ) | |
| ) | |
| **ASHLEY GRAYSON,** ) | |
| **Defendant.** ) | |

**MEMORANDUM IN SUPPORT OF GOVERNMENT'S RESPONSE TO DEFENDANT ASHLEY GRAYSON'S MOTION FOR RECONSIDERATION OF DENIAL OF MOTION FOR MISTRIAL**

The United States of America files its memorandum in support of its response to defendant Ashley Grayson's Motion for Reconsideration of Denial of Motion for Mistrial. (RE-190). For the following reasons, the defendant's claims are without merit, and this Court should not grant a new trial.

**BACKGROUND**

A Grand Jury returned an indictment that charged Ashley Grayson and her husband Josh Grayson with Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire in violation of 18 U.S.C §1958. RE-1 Indictment. Ashley Grayson moved that the Court suppress the recording of a FaceTime call. RE-63. The United States opposed the motion to suppress. RE-7. Ashley Grayson replied to the Governments Response to Defendants Motion to Exclude Evidence. RE-78. The Trial Court denied the Motion. RE-75. At trial, after the Trial Court gave preliminary instructions to the jury, Ashley Grayson moved for a mistrial. The United States asked the Trial Court to give a curative instruction. RE-144, Trial Transcript, PageID 1123-1130. The Court denied Ashley Grayson's motion and gave a curative instruction. Id. PageID

1130-1133. At the close of the United States' proof, Ashley Grayson renewed her motion for a new trial based on the Trial Court's preliminary instruction. RE-147, Trial Transcript, PageID-1752. The Trial Court denied the motion and gave the proper Jury instruction regarding the "issue" of the accused's state of mind. A jury convicted Ashley Grayson.

Ashley Grayson filed a Motion for Judgment of Acquittal and New Trial. RE-137. Ashley Grayson filed a Motion for Judicial Recusal and Renewed Motion for Mistrial. RE-152. The United States opposed Ashley Grayson's Motion for Judgment of Acquittal and Renewed Motion for Mistrial. RE-159. The United States opposed Ashley Grayson's Motion for Judicial Recusal and Renewed Motion for Mistrial. RE-162. Ashley Grayson replied to the United States' Responses. RE-163. The United States filed a Surreply to Ashley Grayson's Response. RE-167. Ashley Grayson filed a Reply to Response to the Government's Surreply to Defendant's Motion for Judicial Recusal or in the Alternative Motion for Mistrial and Request for Evidentiary Hearing. RE-171. The Trial Court denied Ashley Grayson's Motion for Judgment of Acquittal and Renewed Motion for Mistrial. RE-174. The Trial Court granted Ashley Grayson's Motion for Recusal, but denied the Renewed Motion for Mistrial. RE-175. Ashley Grayson filed an Amended Motion for Reconsideration of Denial of Motion for Mistrial. RE-190.

## Standard of Review

### Rule 33

"A motion for a new trial is governed by Rule 33 of the Federal Rules of Criminal procedure, which provides that the court may 'vacate any judgment and grant a new trial if the interest of justice so requires.'" *United States v. Dimora*, 879 F.Supp. 718, 724 (N.D. Ohio 2012)(quoting Fed. R. Cr. P. 33). While the trial court may sit as the "thirteenth juror…[t]he

Court should exercise discretion only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *United States v. Turner*, 490 F.Supp. 583, 593 (E.D. Mich. 1979).

The interest of justice provision also "allows the grant of a new trial where substantial legal error has occurred," including "any error of sufficient magnitude to require reversal on appeal." *Dimora*, 879 F.Supp. at 724 (internal citations omitted).

Rule 33 (b)(2) addresses the time in which a motion for new trial must be filed and state: "Any Motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."

## Analysis

This is the fifth time that Ashley Grayson has asked a Trial Court to grant a new trial. The amended motion is repetitive of previous claims that have all been ruled upon by the Trial Court.

Ashley Grayson's claims do not rely on newly discovered evidence. She asserts four unfounded error claims with the Trial Court's Denial of Motion, and makes no claim that justice demands a new trial. Thus, this Trial Court should not consider this Motion for Reconsideration of Denial of Motion for Mistrial.

If this Trial Court allows the motion, the United States opposes the motion. All of the grounds raised in the Motion for Reconsideration of Denial of Motion for Mistrial have previously been ruled upon correctly and the motion should again be denied.

## Relevant Portion of the Trial

Judge McCalla gave pretrial jury instructions and his own examples for approximately thirty minutes which is reflected by thirty-seven pages (PageID 1096-1133) of trial transcripts.

Before the instructions began, Judge McCalla told the jury:

> Ladies and gentlemen, you're now the jury in this case. I'm going to take a few minutes – it's actually a little longer—to tell you something about your duties as jurors and to give you some preliminary instructions.
>
> At the end of the trial, I will give you detailed instructions on the law, and those instructions will control your deliberations. These are merely for your guidance so that you can make sense of materials as they're submitted. At the end of the case, again, I will give you detailed instructions on the law, and those instructions are the instructions you must follow in making your decision in this case.

RE-144, Trial Transcript. PageID 1096.

During these instructions and examples while talking about a defendant's mental state

Judge McCalla said:

> Well, I want going to explain something. A reminder to all of you of something you probably know already. Ordinarily, there is no way that a defendant's state of mind can be proved directly because, in fact, at this point in time in our history, no one can read another person's mind and tell what that person in thinking… so we start there. We're not mind readers. So, how is this going to be proven? How would the government have to prove this? Well, I suppose if they could have a recording that says, I'm going to kill somebody, that might be important.
> But a defendant's state of mind can be proved indirectly form the surrounding circumstances. This includes something like what the person said, what the person did, how the person acted, and any other fact or circumstances in evidence that show what was in the defendant's mind.

RE-144, Trial Transcript. PageID 1116-117.

After Ashley Grayson objected to the example used by the Court, Judge McCalla told the jury to disregard the example and gave a curative instruction:

> I need to clarify something that we went over earlier, and that is we were talking about intent. I probably gave an example that's not really appropriate to have given in this case, so I want you to rethink that.
> I'm going to tell you about some uses of video in previous cases, not in this case. Not in this case at all. We just tried a case not long ago in which there were multiple both video recordings and silent recordings. Some didn't have audio. Some did. It was a multiple -- it had multiple charges in the case, a lot of things going on. And sometimes you couldn't tell exactly what was going on.
> But in that case, there was one little piece of evidence that showed up in several videos, and that was a particular black Impala. And part of the thing was where was the defendant? Was the defendant there or not there? Well, I'm not

sure. I don't know. But part of the circumstantial evidence was that a black Impala owned or having – the defendant having access to because it's actually owned by someone else but having access to was in these locations, actually, in the locations on some occasions in front of the facility or store that was robbed.

Well, did that say that the defendant was there? No. That was -- not really. We didn't see the defendant. We saw a black Impala that he had access to and that he could drive. Well, that was a piece of the case. The question was did he -- was he there and did he have the intent to commit these particular offenses, but it was mainly was he present?

So circumstantial evidence does not necessarily tell you what actually happens, right? But it tells you that it is a fact from which you may draw another conclusion. You may draw the conclusion that this was a totally different person totally unrelated to this case, that he was there. You may draw the conclusion that there are lots of black Impalas in Memphis, Tennessee that look like this car. There's just not enough proof to show that he was there. It's far from conclusive on that question. So that can be circumstantial evidence that suggests that you might draw.

Now, any reference that I made earlier to any video or tape or recording, I'm going to ask you to disregard that. Just don't think about it. That is not before you at this time, and we're going to wait and see and I don't know what will happen in this case. And I'm not even saying that is a basis or sufficient basis to draw any conclusion about anything. I just don't know. I just don't know. And thank goodness, I don't have to make those decisions.

So if somebody says, well, the judge said something about in the preliminary instructions, you say, wait a minute, wait a minute, those were preliminary. They were just talking points. They weren't things that are going to relate to this case. It's just a very matter -- and I'm not -- we're disregarding that altogether. I'm going back to the black Impala. We're just going back to the idea that there can be things that suggest that an inference can withdrawn. But I don't know, and you don't know.

What we do know is, what? That you're going to get to see the evidence that's properly admissible in the case, and you can draw those inferences, and that's an important point, that are logical and appropriate in the case because we understand that a jury can draw inferences, but you're not required to. So we're going to wait and see on that. So I'm going to ask you, erase mode. We're going to be back to that one. We're going to take that one out because that's not something we're going to talk about here. And if somebody brings it up and says I said, you're not going to hear me saying that in the final instructions. I'll tell you that right how. It's not going to be there. It's not going to be there because we're leaving every issue, every issue regarding the facts in the case entirely up to you. I never want to suggest anything about those things. That's just not my business. That's not my job, and I should not do that.

RE-144, Trial Transcript. PageID 1130-1132.

At the end of the trial Judge McCalla charged the jury regarding the required mental state:

> Next, I want to explain something about proving a defendant's state of mind.
>
> Ordinarily, there is no way that a defendant's state of mind can be proved indirectly from the surrounding circumstances. This includes things like what the defendant said, what the defendant did, how the defendant acted, and any other facts or circumstances in evidence that show what was in the defendant's mind.
>
> You may also consider the natural and probable results of any acts that the defendant knowingly did or did not do, and whether it is reasonable to conclude that the defendant intended those results. This, of course, is for you to decide.

RE-123, Jury instructions. PageID-493; RE-147, Trial Transcript, PageID-1846.

## **UNITED STATES' POSITION THROUGHOUT**

The United States argued at trial, both in the Government's Response to Defendant Ashley Grayson's Motion for Judgment of Acquittal and New Trial, and in the Government's Response to Defendant Ashley Grayson's Motion for Judicial Recusal and Renewed Motion for Mistrial, that the Court did not comment upon the evidence. The Court gave an example in a long list of examples in its preliminary jury instructions. At the beginning and end of those instructions, the Court stressed that the preliminary instructions were a guide to the trial and that the jury instructions at the end of the trial would govern the jury's deliberations.

The Court's example needs to be placed in its proper context. Judge McCalla is loquacious. The transcript bears out this point. The statement was one of many statements and comments made during the jury selection and pretrial instruction process that took almost two days. To the extent that Judge McCalla made a comment, it was one of many. The proper measures were taken by the Court to rid the comment of any potential improper influence it may have had on the jury. The comment was diluted in a sea of words, examples, questions, and stories. No witnesses had been called at this point, and the Judge went out of his way to tell the

Jury to ignore what he said as it related to Defendant Ashley Grayson's objection.

If the Court finds that the example given by the Trial Court was improper or prejudicial, the United States maintains that jury instructions can cure improper or prejudicial statements made during trial. In *State v. Hinds*, No. E202200544CCAR3CD, 2023 WL 5164634 (Tenn. Crim. App. Aug. 11, 2023), appeal denied (Jan. 11, 2024), the defendant argued that the prosecutor's comments during closing arguments regarding the jury's duty to convict were inappropriate, and the court failed to issue curative instructions regarding those comments. *Id*. at 31. However, on appeal, the court held that the State and trial court took curative measures. *Id*. The trial court's curative instruction reminding jurors of their duty under the law given shortly before jury deliberations was sufficient to remedy the improper comment. *Id*. at 33. On appeal, the court also stated, "in light of the trial court's curative instruction and the strong evidence of the defendant's guilt presented at trial, we cannot conclude that the prosecutor's improper comment was so inflammatory that it affected the verdict." *Id.* at 33. Furthermore, a curative instruction by a trial court even occasionally renders harmless the erroneous admission of prejudicial evidence, whereas in this case there was no prejudicial evidence admitted. *See United States v. Layne*, 192 F.3d 556 (6th Cir. 1999).

In this matter, within minutes of making the potentially improper or prejudicial statement, Judge McCalla went out of his way to give a curative instruction. He also told the jury to disregard the statement, not to consider the statement during jury deliberations, and not to allow others to mention the statement either.

Judge McCalla did not comment on the evidence or make an improper or prejudicial statement in his preliminary instructions. But, even if Judge McCalla did comment on the evidence or make an improper or prejudicial statement, his admonishment to ignore the example,

in addition to his contemporaneous curative instruction and the proper final jury instruction served to render harmless any comment made by the Court. Thus, there continues to be nothing in the interest of justice that would require a new trial.

### UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION

The United States submits the Defendant's Motion for Reconsideration is frivolous. The United States maintains that the alleged "errors" listed in the Defendant's Motion for Reconsideration are all subparts of the overarching arguments outlined above. None of these "errors" taken alone or collectively will change the position that the example given by Judge McCalla was not prejudicial, and if it was, that it was cured by the Trial Court's admonishment to ignore the statement coupled with the curative instruction itself.

#### First "Error"

**The Defendant claims the Trial Court made a false statement about its knowledge of the contents of the video.**

Ashley Grayson contends that in its ruling the Trial Court made a false statement when ruling on her motion to reconsider. RE-190, p. 4-6.

The United States asserts that this claim is unfounded. The Trial Court had never seen the FaceTime video.

Ashley Grayson asserts that the Trial Court lied when ruling on the Motion to Reconsider in RE-175. The Trial Court asserted that when he gave the example of a video in the preliminary jury instruction, he did not know the contents of the FaceTime video that would eventually become evidence in the case. The United States disagrees with the Defendant's contention that the Trial Court lied when making this statement.

The Trial Court gave its example during preliminary jury instructions. Before it was presented in the government's case in chief, the Judge had not seen the video. The Judge had heard the parties describe the video and what they thought the contents of the video showed, but the Judge had not seen the video. A prudent jurist may assert that they do not know the contents of a piece of evidence until it as admitted in a trial and placed in its proper context. As such, the Trial Court did not lie when saying that it did not know the contents of the FaceTime video.

Even if the Court did know the contents of the video, and the "offending" example was given in error, the Court told the jury to disregard the example, gave a curative preliminary instruction, and gave the proper jury instruction.

**Second "Error"**

**The Defendant Claims that the Trial Court misunderstood a Sixth Circuit Court of Appeals Decision and the Sixth Circuit Pattern Jury instructions.**

Ashley Grayson contends that in its ruling, the Trial Court misinterpreted a case holding when ruling on her motion to reconsider, RE-190, p. 7-9.

The United States disagrees.

The Defendant alleges that the Trial Court misinterpreted the Sixth Circuit's decision when relying on United States v. Fredrick in their denial of the defendant's motion for mistrial. Their argument relies on a literal interpretation of what the Sixth Circuit's reasoned in upholding the disputed jury instruction:

> He contends that the non-exclusive list read by the district court (which adopted the instruction proposed by the Government) so closely matched his own case that it was prejudicial. But the list of factors that the district court read was simply drawn, almost word for word, from a passage in United States v. Ceballos-Torres, 218 F.3d 409 (5th Cir.2000).

*United States v. Frederick*, 406 F.3d 754, 762–63 (6th Cir. 2005).

In its order, the Trial Court cited to *United States v. Frederick*, 406 F. 3d 754 (6th Cir. 2005) to illustrate that a jury instruction that is similar to the reality of the case is not to be considered prejudicial. RE-175, p. 20.

The Sixth Circuit used the *Ceballos-Torres* case in *Frederick* to exemplify that the similarities between the facts of the case and the jury instruction were not prejudicial. The Court did not intend to only allow the use of jury instructions that are verbatim from *Ceballos-Torres* or any other case, like the Defendant argues. Even when the facts of a case are similar to the illustrations in the jury instruction, it is not prejudicial enough to be excluded. *Frederick*, 406 F.3d 754 at 63.

Additionally, the Defendant claims that the Trial Court erred in stating the jury instructions were "grounded in the Sixth Circuit's pattern jury instruction" as it relates to the mindset of the defendant. Def.'s Motion for Reconsideration RE-190, p. 7-9.  The Defendant argues that the court went too far beyond the Sixth Circuit's pattern jury instructions—which the court only claimed to be "grounded" in—and that the use of "specific evidence" in its instruction is inappropriate and led to the basis for Defendant Grayson seeking a mistrial. However, the Trial Court did not cite to specific evidence in its instruction. The Trial Court used a generalized hypothetical to simplify the pattern jury instructions for the jury to understand that a defendant's state of mind can be proved indirectly from the surrounding circumstances.

### Third "Error"

**The Defendant claims that the Trial Court erred when it held that the preliminary instruction was not a comment on the evidence.**

Ashley Grayson contends that in its ruling the Trial Court erred when it concluded that

the preliminary instruction was not a comment on the evidence. RE-190, p. 9.

The United States asserts that this claim is unfounded. The Trial Court had never seen the FaceTime video (*see* First "Error" above). As stated previously, the example in the instruction was one of many. None of those examples were comments on the evidence. There was no evidence in the trial at that time.

Even if the Court did know the contents of the video, and the "offending" example was deemed to be a comment on the evidence; the Trial Court told the jury to disregard the example, gave a curative preliminary instruction, and gave the proper jury instruction.

### Fourth "Error"

**The Defendant contends that the Trial Court is wrong and that the case is overwhelmingly about the video.**

Ashley Grayson asserts that the Trial Court is wrong, and the case is overwhelmingly about the video. RE-190, p. 10.

The video was an important piece of evidence, but the United States presented it within the proper context that came from witness statements, social media posts, text messages and other written communications to permit a meaningful interpretation by the jury.

The evidentiary value of the video did not become clear until all of the evidence had been presented by the United States. Neither the Judge nor jury could know what the video meant until they saw it and understood it in the context of the evidence offered by the United States. The Trial Court did not lie about the video ("Error" One) and did not comment on the evidence ("Error" Three), because the Trial Court had not seen the video and the other evidence yet. The video is important to the case, but not without the other evidence.

## **Conclusion**

Based on the foregoing, this Court should deny Defendant's motion for a new trial.

    Respectfully submitted,

    REAGAN TAYLOR FONDREN
    Acting United States Attorney
    Western District of Tennessee


    By: s/P. Neal Oldham
    P. NEAL OLDHAM
    Assistant United States Attorney
    167 N. Main Street, Suite 800
    Memphis, TN 38103
    (023811 – Tennessee)

## **CERTIFICATE OF SERVICE**

I, P. Neal Oldham, Assistant United States Attorney for the Western District of Tennessee, hereby certify that a copy of the foregoing Response has been forwarded to defendant's attorneys via the court's electronic delivery system.

s/P. Neal Oldham
P. Neal Oldham
Assistant United States Attorney
